In the Matter of Jerusha Lamoree.

# SUPREME COURT.

## In the matter of Jerusha Lamoree, a Lunatic.

If the *next of kin* of a *lunatic* (legally found such) unite in a petition and name a proper person as *committee*, of the lunatic, or give their consent in writing to the appointment of a particular person, it is usual to select such person the committee. But if the next of kin have not assented or united in the petition there should be an order of *reference*, and then the next of kin are entitled to notice of the proceedings and to propose themselves as the committee.

Where a *stranger* is appointed such committee, without the request of the relatives and next of kin of the lunatic, and without an order of reference, and without notice to the persons having a prospective interest in the estate, the appointment will be *set aside* as unauthorized.

*Poughkeepsie General Term, May,* 1860.
LOTT, EMOTT *and* BROWN, *Justices.*

APPEAL from an order of the county court denying motion for the appointment of a committee of lunacy.

WILBER & VAN CLIEF, *for appellant.*
EDWARD CRUMMY, *for respondent.*

By the court—BROWN, Justice. The papers read upon this motion before the county court, afford ground for the belief that the proceedings upon the execution of the writ *de lunatico inquirendo* were not free from some irregularity, and if the principal fact which it was the object of the proceedings to establish and ascertain was left open to any doubt it might be right to set them aside and institute a new inquiry, so that the mental condition of the person affected by them should be established positively and certainly. The lunacy of Jerusha Lamoree is not, as I understand, disputed. Her relatives, and all others who know anything of the state of her mind, concur with the jury in the opinion that she is a lunatic and incapable of managing her affairs, and unfit to govern herself. Under such

circumstances, no good purpose could be served by vacating the proceedings prior to and including the filing and confirmation of the inquisition, and we are therefore of opinion that the county court did right to deny that part of the motion.

The petitioner upon whose application the proceedings were instituted is Susan Van Wagner, and they were conducted up to the 5th December, 1859, by TALLMAN, PAYNE and LORD, as her attorneys. On that day, by a written consent to that effect, they ceased to act further in that capacity, and WILBER and VAN CLIEF, were substituted in their place.

A petition was prepared, signed and sworn to, by Susan Van Wagner, on the 24th November, 1859, praying for the appointment of Alexander H. Vail, of Schodack, in the county of Rensselaer, and Robert Cookingham, of Hyde Park, Dutchess county, committee of the person and estate of the lunatic. Annexed to it was the written consent of her brother, George Smith, that they be appointed such committee. Cookingham, it appears, is nephew and one. of the next of kin of the lunatic, and Alexander H. Vail is her brother-in-law. The time when this petition was presented, and the order consequent upon it obtained, is one of the points in dispute—the moving party alleging that it occurred after TALLMAN, PAYNE and LORD had been superseded in their office as the attorneys of the petitioner, and on that account unauthorized and irregular; while the adverse side allege it was presented and the order obtained for the appointment of the committee on the third day of December, which is the day of the caption of the order.

In the view I entertain of the case, the real time is of little consequence. The order is made upon reading and filing the inquisition, and also upon reading and filing the petition of Susan Van Wagner, and declares that Alfred Duer, of the town of Clinton, be appointed committee of

the person and estate of the lunatic, upon giving the customary bond in the penal sum of $25,000.

The real complaint of the moving party is the making of this appointment, and I am constrained to say that the complaint is just; for the appointment of a stranger to execute a trust so delicate and of such responsibility without the request of the relatives and next of kin of the lunatic, without an order of reference, and without notice to the persons having a prospective interest in the estate, is not authorized by the practice of the courts having jurisdiction over such matters.

If the next of kin unite in a petition and name a proper person as committee, or give their consent in writing to the appointment of a particular person, it is usual to select such person. But if the next of kin have not assented or united in the petition there should be an order of reference, and then the next of kin are entitled to notice of the proceedings upon the reference and to propose themselves as the committee.

*In the matter of Taylor, a lunatic,* (9 *Paige,* 611,) the chancellor held that it is not a matter of course to commit the guardianship of the estate of a lunatic to those who are presumptively entitled to it upon his death, as heirs or next of kin. But they will be appointed the committee of his estate when it satisfactorily appears to the court they are the persons most likely to protect his property from loss.

Blackstone, in his commentaries, (*vol.* 1, 305,) after saying that, to prevent sinister practices "the next heir is seldom permitted to be the committee of the person, because it is his interest the party should die," also says : "But it hath been said there is not the same objection against his next of kin, provided he be not his heir, for it is his interest to preserve the lunatic's life in order to increase the personal estate by savings, which he or his family may hereafter be entitled to enjoy. The heir is

generally made the manager or committee of the estate, it being clearly his interest by good management to keep it in condition, accountable however to the court of chancery and to the *non compos* himself, if he recovers, or otherwise to his administrators."

*In ex parte Le Hucp*, (18 *Vesey Rep.*, 221,) the master had approved of Mr. Benjafield, a stranger, committee of the estate, in preference to the lunatic's uncle and another who had been proposed, and both were unexceptionable. Lord ELDEN sent back the report to be reconsidered, and said : " When strangers are appointed they acquire an influence over the private and domestic concerns of a family, which ought always to be restricted if possible within the circle of the family itself."

The law in dealing with the persons and estates of that unfortunate class who are bereft of reason and intelligence, proceeds upon principles which must commend themselves to the sanction and approbation of every humane and enlightened mind. Considering the close and intimate relations which the committee must maintain with the family and relatives of the lunatic, his power of control— all but absolute—over his person and property, the remote possibility of his ever being in a condition to make any disposition of his estate, which shall prevent its descent and transmission to the heirs at law and next of kin—a rule of practice or of positive legislation which would justify the appointment of a stranger to execute the trust of committee, without the assent and against the will of his family or other relatives, and without any sufficient or adequate cause, would be oppressive and intolerable. It would be little less offensive than to deprive a person of his property without cause, and without the authority of law.

In respect to character, capacity and responsibility, we think Mr. Alfred Duel entirely unexceptionable. But he is a stranger to the lunatic; his name was not proposed

In the Matter of Jerusha Lamoree.

by any of her relatives, or those interested in the protection and preservation of her estate. They had no opportunity to be heard, for there was no reference to which they could have been summoned.

The petition upon which the appointment was made prayed that to the nephew and brother-in-law of the lunatic might be committed the trust, and no reason is assigned or suggested why they were set aside and another selected. It was indeed suggested as an objection to Alexander H. Vail, that he was not a resident of the county of Dutchess, when the proceedings were had, and hence not amenable to the process of the county court. This objection is futile. He was a resident of the state, and within the jurisdiction of its courts, and subject to their orders and judgments. In this, as in all other trusts of a similar kind, no more limited residence of the trustee is required.

In conclusion, we think the order appointing the committee was improvidently granted, and whenever it was brought to the notice of the county court it should have been vacated. So much of the order appealed from as denied the motion to set aside the proceedings subsequent to the filing of the inquisition is reversed, and such proceedings are vacated and set aside, to the end that the petitioner, Susan Van Wagner, may have an opportunity to renew her application for the appointment of a committee of the person and estate of the lunatic.

No costs of appeal are given to either party.