## N. Y. COMMON PLEAS.

### In the Matter of Ann Eliza Owens, an Idiot.

*Appointment of committee of the person and estate of an idiot.*

It is not irregular to appoint a stranger the committee of the person and estate of an idiot or lunatic, without notifying those who, as next of kin, will succeed the idiot or lunatic as heir.

*General Term, April,* 1874.

APPEAL from an order at special term, denying an application made by Sarah Ann Suttie, a sister of the idiot, to set aside an order of this court appointing Nathaniel Jarvis, Jr., committee of the person and estate of the above-named idiot.

*Coles Morris & Michael H. Cardozo,* counsel for appellant.

By an order of this court, made on the 27th day of May, 1873, Ann Eliza Owens was adjudged an idiot, and Nathaniel Jarvis, Jr., Esq., was appointed the committee of her person and estate.

F. Owens, the father of said idiot, by his last will and testament, devised to his wife, Ann Owens, a life estate in all the property of which he died seized, and at her death he directed the same to be divided in such manner as that his said daughter Ann Eliza should receive three-fourths, and his daughter Sarah A., now the wife of William J. Suttie, one-fourth thereof.

Mrs. Suttie received no notice whatever of the execution of any commission to inquire of the idiocy of her sister, or of

any of the proceedings herein. She never consented to the appointment of Mr. Jarvis as the committee of the estate and person of her sister, and did not know of the same or of any motion for that purpose until long after the entry of the order making such appointment, though she resides in the same house as her mother and the idiot.

The appellant charges that the aforegoing proceedings were not taken in the interest of her sister, but solely for that of her mother, who is contriving and confederating with divers persons to procure a sale of her own and of the idiot's interest in the real estate for much less than its actual value, for the purpose of securing a larger interest therein than she is entitled to under the will. It also appears that the mother is an ignorant person, being unable to read or write.

Mrs. Suttie is able and always has been, and is now willing to take care of her crippled sister without charge or expense to her.

*First.* The order is appealable (§ 1, *ch.* 270, *p.* 592, *Laws of* 1854).

*Second.* The appointment of a stranger as the committee of the estate and person of an idiot, without the request of the relatives and next of kin of the idiot, and without a reference, and without notice to persons prospectively interested in the estate, is irregular and unauthorized by the practice of the courts having jurisdiction of such matters (*Lamoree's case,* 11 *Abb. Pr. R.* [*O. S.*], *p.* 274; *ex parte Le Heup,* 18 *Ves., Jun., Ch. R., p.* 221; *Van Santvoord's Eq. Prac., vol.* 2, *p.* 368; *Re Meux,* 2 *Coo. t. Cott,* 106, 107, *n; Phillips on Lunacy, p.* 274; *Shelford on Lunacy, Law Library, p.* 84).

*Third:* The heir, or a person having an interest in the estate, or a relative of the person of unsound mind, is generally preferred to a stranger in such committeeship (*Phillips on Lunacy, pp.* 278, 281, *and authorities there cited; Shelford on Lunacy, vol.* 2 *of Law Library, p.* 88; *Stock on Non Compos Mentis, vol.* 25 *of Law Library, p.* 71).

In the Matter of Owens.

*Fourth.* A female is always preferred as the committee of the person of an insane unmarried female (*Phillips on Lunacy, p.* 279; *ex parte Ludlow,* 2 *P. Wms.,* 638).

*Fifth.* The wishes of the person *non compos mentis* always have weight; even unfounded prejudices are not disregarded (*Phillips on Lunacy, p.* 279, *and cases there cited*).

*Sixth.* The old rule which excluded, as a matter of course, the next of kin from the office of the committee of the person, whenever such next of kin was also heir to the idiot's estate, has long been exploded, as being unsuited to any but the most barbarous times (*Dormer's Case,* 2 *P. Wms.,* 263; *ex parte Ludlow, id.,* 638; *ex parte Cockayne,* 7 *Ves., Jun., Ch. R.,* 591; *In the matter of Livingston,* 1 *John. Ch. R., p.* 436, *Kent, Ch.*).

*Seventh.* The "next heir," even when the old rule did prevail, was given the preference as committee of the estate of the idiot, it being clearly his interest, by good management, to keep the estate in good condition, accountable always to the proper court (*Blackst. Comm., vol.* 1, *p.* 305).

*Eighth.* The real estate of the late Francis Owens, upon the death of Ann Eliza Owens, the idiot, will descend in fee to Sarah Ann Suttie, the sister of said idiot, subject only to the life estate of their mother, Ann Owens (1 *R. S., p.* 751, § 6).

*Ninth.* It is true that the mother did consent to the appointment of this committee; but fraud and improper conduct are alleged against her, and though she denies these charges, and her denial, so far as regards this motion, is conclusive, still they may, nevertheless, be true; and their truth might and would have been proved if the reference usual in such proceedings, with notice thereof to Mrs. Suttie, had been directed. The ends of justice, therefore, demand, and the conscience of a court of equity will be better satisfied by a reversal of so much of this order as is appealed from, thereby giving this appellant an opportunity of proving the truth of those charges, especially as by so doing no injury will accrue to any one.

In the Matter of Owens.

*Tenth.* It cannot be urged as an objection to this appeal that the grounds of the motion were not sufficiently pointed out in the order to show cause, for they were fully stated in the moving affidavits, and distinctly sought to be met by the opposing affidavits, and actually discussed in the court below (*Livermore* agt. *Bainbridge*, 14 *Abb. Pr. R.* [*N. S.*], *p.* 227).

*E. J. Pattison & Charles M. Marsh*, counsel for respondent.

The fact of idiocy is conceded; and there is no application to set aside any of the proceedings which judicially declared such to be the fact.

This committee was appointed on the application of the mother of the idiot, she desiring the appointment of Mr. Jarvis.

The motion to set aside the appointment was made by the only sister of the idiot, who, upon its death, would be entitled to all its property.

The proceedings in idiocy were without notice to this sister, and the committee was appointed without her knowledge or acquiescence.

It appears from the papers that the idiocy is extreme, so that the idiot is totally unable to take care of or even to feed herself, and has no use of her lower limbs.

That during its life it has been in charge of its mother.

It appears that this mother is unable to write, and all the papers are simply signed with her cross.

It further appears that the applicant, Sarah Ann Suttie, is a married woman, is in weak health, and has not the necessary strength to take care of her sister, the idiot.

*First.* The fact of idiocy once judicially determined, the entire proceedings necessary for the care and custody of the lunatic are left to the discretion of the court.

1. The statute provides:

In thé Matter of Owens.

The chancellor shall have the care and custody of all idiots, lunatics, persons of unsound mind, and persons who shall be incapable of conducting their own affairs in consequence of habitual drunkenness, and of their real and personal estates, so that the same shall not be wasted or destroyed; and shall provide for their safe keeping and maintenance, and for the maintenance of their families, and the education of their children, out of their personal estates, and the rents and profits of their real estates, respectively (2 *Ed. Stats.*, *p.* 53).

2. By the constitution of 1846, the powers of the chancellor and his court were vested in the supreme court (*Con., art.* 6; *Sherman* agt. *Felt*, 2 *N. Y.*, 186).

3. This jurisdiction was given to the county courts (*Code,* § 30), and was, in common with the other powers of those courts, conferred upon the court of common pleas (*Laws of* 1854, *p.* 464).

*Second.* There is neither statute or rule to be found requiring any particular course to be adopted on appointment of committee. The course of proceeding is left entirely in the conscience of the court.

*Third.* The proceedings, therefore, are not appealable.

1. There being no particular practice prescribed, there can be no *irregularity*, and, if there could be, no irregularity is specified in the order to show cause, as required by rule 46.

2. The matter being left in the discretion of the judge who appointed the committee, his decision is not appealable (*In re Griffin*, 5 *Abb. Pr.* [*N. S.*], 96).

*Fourth.* If there be any review possible, it can be only upon the ground suggested in the case of Lamoree (11 *Abb.,* 274), *i. e.,* gross abuse of judicial discretion in the court below.

There has been no such abuse in this case.

1. The proper party in the first instance was the mother. She was the nearest relative, and to her the estate could not possibly descend, and was, therefore, in every respect the proper party.

2. But the mother declined to act, and in view of her ignorance it was manifest it was not desirable she should have the custody of the property. The rights of the idiot in the property are such, that it cannot bear the burden of two committees. The mother, therefore, asks the court to appoint its clerk the committee, that the property may be protected, and she remain undisturbed in the custody of her child.

So far is this from being a gross abuse of discretion, that, on the contrary, it is the most just and beneficent disposition the court could make of the matter.

3. Who is it claimed should have been appointed committee? It is the sister of the idiot, and its next heir.

(*a*) Under the old chancery practice, the next heir of an idiot was ineligible as a committee of the person (1 *Black-stone's Com.*, 305; *ex parte Ludlow*, 2 *P. Wms.*, 638).

(*b*) Although this rule has been departed from in this state to such an extent as to allow the heir, under some circumstances, to be appointed, yet it never can be called a gross abuse of discretion to refuse to appoint to an office a person whose relations are such that the courts for centuries held him ineligible.

(*c*) In this case, however, the moving party was a married woman, with the cares of her own family upon her, under the control of her husband, in such feeble health as to need care herself, and totally unable to bestow the necessary care upon the idiot. Her husband, a mechanic, dependent upon his daily labor for his bread; herself in that delicate health which renders it irksome, if not impossible, to bestow the necessary attentions to one utterly helpless; nothing but this helpless idiot between herself and a handsome property, the possession of which would give her those luxuries which are almost necessaries to the sick; it was clearly a case to apply the old rule that the heir could not be committee, and even were there no mother or other relation, it would have almost

amounted to a gross abuse of discretion to have appointed the appellant.

*Fifth.* The principle which governed in the case of Lamoree, above mentioned, is wanting here. There the ground of the reversal was, that the appointment of a stranger against the wishes of the heirs was an unwarranted intrusion into the sanctity of the family. Here, however, that member of the family who was nearest to the idiot, who would necessarily be thrown most with the committee, herself requests the court to appoint its clerk.

Can it be possible that a mother who has devoted her life to her helpless child, caring for it in a manner that left no room for even a charge against her, need state more plainly to the court the fears which she entertains, should the custody of this idiot be given to the one person interested in its death.

*Sixth.* The order appealed from must be affirmed.

DALY, *C. J.*—This is an appeal from an order denying a motion to vacate an order appointing Nathaniel Jarvis, Jr., the committee of the estate of the idiot, upon the ground that the idiot's sister, Sarah A. Suttie, who is a tenant in common with the idiot, of real estate under the will of their father, had no notice of the proceedings by which Mr. Jarvis, upon the consent of the idiot's mother, was appointed committee of the person and estate, or of the proceedings by which Ann Eliza Owens was found to be an idiot.

It is not denied but that she is an idiot, nor is the finding of the inquisition by which she was so declared questioned. It is insisted, however, that it was irregular to appoint a stranger the committee of her person and estate without notice to the sister, who is a tenant in common with her in the reversionary estate, and who, in the event of the idiot's death, would, if surviving, be her heir.

I know of no authority, and none has been referred to, holding that it is irregular to appoint a stranger the com-

In the Matter of Owens.

mittee of the person and estate of an idiot or lunatic, without notifying those who, as next of kin, will succeed the idiot or lunatic as heir.    Judge Brown held very properly, in *Lamoree's Case* (11 *Abb.,* p. 274), that an order appointing a stranger the committee of a lunatic, where the next of kin did not assent or unite in the petition, was improvidently granted.    But that is not this case.

The mother of the idiot, who is her next of kin, instituted the proceedings by which her daughter was declared *non compos mentis*.    It was upon her petition that the proceedings were founded ; and it was at her request and upon her written consent that the court appointed Mr. Jarvis the committee.    Judge Brown says that if the next of kin do not assent or unite in the petition, there should be an order of reference, of which they should have notice, that they may have an opportunity to propose themselves as the committee ; in all of which I fully concur ; but here the next of kin, the mother, did assent.    I also recognize the propriety, to prevent abuses, of notifying those relatives who may succeed as next of kin of the proceedings, that they may have the opportunity of proposing themselves as the committee ; for, although it is not a matter of course to commit the guardianship of the estate of an idiot or lunatic to those who are presumptively entitled to it upon the idiot or lunatic's death (*Matter of Taylor*, 9 *Paige*, 611), they may, under certain circumstances, be regarded as the proper persons to whom to commit the custody of the estate, as those who are most likely to protect it from injury or loss.    If we had nothing before us upon this appeal but the fact of the appointment of a stranger, without notice to the sister, who, if she survives her mother and the idiot, will inherit the whole of the estate, I should, in view of the possibility of abuse, hesitate to affirm the order. But, looking at all the facts which were before the judge and are before us upon this appeal, I think he did right in denying the motion.

F. Owens, by his will, left all his property, real and per-

sonal, to his wife, the mother of the idiot and of her sister, during her, the wife's, natural life; and upon her death he directed that it should be divided between his two daughters—three-quarters of the whole to the idiot, and the remaining one-quarter to her sister, Mrs. Suttie. The idiot is now twenty-four years of age. She has been entirely helpless from her birth, and the mother has, at her own expense, continuously taken care of the helpless creature from her infancy. The sister, Mrs. Suttie, has no property, except the household furniture given her by her mother and the interest before referred to in her father's estate, after the death of her mother, and her husband is a man of small means, depending upon his labor as a jeweler for his support. She is also a person physically weak, at all times in bad health, from time to time requiring the care of her mother, and has not sufficient strength to take the necessary care and charge of her sister, who requires *constant personal care* and *attention.* It is in view of these circumstances, and of the event, as the mother states, that she may herself be taken away by death, that she sought, by this proceeding, to provide that her helpless offspring might be left in the care of a competent and fit person who would conscientiously look after her interest, comfort and welfare; and it was in this view and with this assurance that she petitioned the court for the appointment of a committee and filed her written consent that the clerk of the court, Mr. Jarvis, might be appointed. No objection is taken as to the propriety or fitness of the selection of Mr. Jarvis. Any objection to him personally was disclaimed upon the argument; the objection being to the appointment of any stranger in preference to the sister, or without notice to her of the proceeding. There being no objection to Mr. Jarvis personally, her motion to vacate the order appointing him, it must be assumed, was made with the intention of proposing herself to the court as the proper person to be appointed the committee of her sister's person and estate.

She says in her affidavit that her mother kept all the pro-

ceedings in the matter secret from her, and that she had no
knowledge of the inquisition or of any of the proceedings
anterior to the appointment of Mr. Jarvis; that the proceed-
ings were not for the interest of her sister; but that her
mother is confederating with others to procure a sale of a
portion of hers and her sister's estate at a sum much less
than the real value of it, with the object of dividing up
the proceeds of the sale in such a manner as to secure to her
mother a larger interest than she would otherwise have in the
will.

The mother's affidavit is a complete and satisfactory answer
to this charge; a considerable portion of it has been already
stated, in addition to which it appears by it that her husband
left by his will two houses—one in Eighty-first street, where
she and Mrs. Suttie reside, and one in Wooster street; that
the rent of the Wooster-street house is $1,000 per annum,
nearly one-half of which is consumed in the payment of taxes
and other expenses; that the building is dilapidated and
nearly worthless, and is used by the tenant for a carpenter's
shop, whilst the lot could be sold for $23,000, which explains
the heavy tax upon premises yielding, in consequence of the
dilapidated building that is upon them, so small an income;
that the rent derived from that and such portions of the house
in Eighty-first street as can be rented are all that she has, and
that it is with difficulty that she can support herself and her
idiot child; that both of these houses were bought with her
own money, the savings of many years of hard labor and a
very trifling assistance from her husband; and that, when
purchased, the title was, upon her suggestion, taken in her
husband's name, and that she does desire that a portion of
the real estate should be sold, believing it to be for the com-
mon interest of all parties, which is certainly true in respect
to the Wooster-street lot, which, if sold for its alleged value,
would yield a fund, the income of which, properly invested,
would be nearly double the amount of what is now derived
from the premises. These facts need no comment. They

show that what the mother has done and wishes to have done is founded in an intelligent view of the circumstances, and the due care in the future of her invalid child.

So far from seeing in the circumstances any reason why this order should be set aside, this daughter might be made the committee of the person and estate of her idiot sister, they show that she would be an unfit person to be intrusted with the charge, either of the person or of the estate. I had occasion, in the matter of *Bomanjee Byramjee Colab* (3 *Daly*, 529), to examine very carefully the nature of the peculiar jurisdiction exercised in the appointment of a committee to take charge of the person and estate of a lunatic, and pointed out, upon the authorities there quoted, that care has always been taken not to intrust the custody of the person or estate to those who may be pecuniarily•benefited by the lunatic's death, or whose interest it is to keep his property from diminishing. Unless the court is satisfied that it would be to his advantage that those who•stand in the relation to him of blood and natural affection should have the custody and care of him, and that, as respects his estate, the governing principle in its management is his interest, and not that of those who may have eventual rights of succession (*Eunice Saulsbury's Case*, 3 *John. C.*, 347).

Acting upon this rule it would not, in my judgment, be for the idiot's interest that the sister should be the committee of the person or of the estate, so far as respects the care of the person.

Mr. Jarvis, as was said in *Justice Dormer's Case* (2 *P. Wms.*, 263), is but a nominal person, as the idiot will, as long as her mother lives, be in the charge of the parent who has hitherto supported and taken care of her, and, as respects the property, it cannot be disposed of without the concurrence of the court; and as the order below has provided that the sister shall have notice of all further proceedings, she will have the opportunity of appearing before the court and objecting to anything proposed to be done which may affect injuriously her own or

In the Matter of Owens.

the idiot's interest in the property. No good end, that we can see, would be promoted by disturbing the present state of things. The only object could be to transfer the custody of the idiot from her mother to that of her sister, and, as respects the estate, to intrust the sister with the care and management of it. Neither of which would be, in my opinion, to the benefit of the idiot.

At least, nothing has been disclosed that shows that it would be for her interest. The order should be affirmed.