## IN THE MATTER OF BENJAMIN PAGE, A LUNATIC.

### (Decided April 2d, 1877.)

There is no rule of law excluding the heirs or next of kin of a lunatic from being appointed committee of his person and property, although the court will exercise circumspection and care in appointing those who might be benefited by the lunatic's death, and who would have an interest in accumulating the income of his estate.

The court selects the committee with the view of doing what in that particular case is best for the lunatic, keeping in view the possibility of his recovery; and does not recognize any absolute preference of relatives to strangers or of strangers to relatives.

The report of a referee, to whom it has been referred, to inquire and report a proper person or persons to be the committee of a lunatic, should not be confirmed where it appears to the court that the referee has exercised no discretion in his selection between the only two persons proposed, but has reported one for nomination on the erroneous supposition that the other was, as a matter of law, excluded from appointment, but the matter should be referred back to him for the exercise of that discretion.

The opinion *In the Matter of Owens*, 5 Daly, 288, explained; by CHARLES P. DALY, Chief Justice.

APPEAL by David C. Page and others, relatives of the lunatic, from an order of this court, made by Judge VAN BRUNT, confirming the report of John M. Scribner, jr., a referee, to whom it was referred, to inquire and report who was a proper person to be appointed a committee of the person and estate of Page, a lunatic.

Testimony was taken before the referee as to the suitability of two persons proposed for the appointment—Stephen H. Olin, a stranger to the lunatic, whose appointment was urged by one of the relatives, and Robert L. Keen, a cousin of the lunatic, whose appointment was urged by all the other relatives who appeared in the proceedings. The referee reported in favor of the appointment of Stephen H. Olin, but by the written opinion accompanying his report, it appeared that his selection had been determined by the fact that he supposed that under the decision of this court *In Matter of Owens* (5 Daly, 288), Mr. Keen was excluded from the appointment because he was a first cousin of the lunatic. The portions of his opinion bearing on that point are as follows : " Having considered the testimony offered, and the authorities submitted by counsel representing the parties severally petitioning for the appointment of Messrs. Olin and Keen respectively, I am of opinion that Mr. Stephen H. Olin is the person who ought to be appointed such committee. No question is raised by counsel as to the integrity, capacity or fitness of either of the gentlemen named, and the only question which arises is as to the rule which should guide the referee in this selection of a committee. I am of course controlled by the decisions of this court, in which the proceeding was instituted for the appointment of a committee of the said lunatic, and in a recent case in this court, at general term, it was held that care has always been taken not to intrust the custody and estate of a lunatic to those who may be pecuniarily benefited by the lunatic's death, whose interest it may be to keep his property from diminishing, whereby the lunatic may be deprived of necessaries or comforts which might be secured to him from the income of his own estate. (*Matter of Owens*, 5 Daly, 293.) This being one of the designated tribunals to

which has been committed by statute the care and custody of the person and estate of a lunatic or person of unsound mind, residing in the city of New York (Code, section 30, Laws of 1854, chapter 198, section 6 ; Constitution, article 6, section 12), it has the same jurisdiction as was formerly confided to the Court of Chancery, without any restriction or limitation, and the manner in which the control thus given is to be exercised is entirely a matter of discretion with the court. (*Matter of Mason*, 1 Barb. 441.)    The governing principle on which the court acts in the appointment of a committee, and in the management of the estate of a lunatic, is the interest of the lunatic himself, and not that of those who may have the right of succession.    (*Matter of Salisbury*, 3 Johns. Ch. 347 ; *Matter of Colah*, 3 Daly, 529; where Chief Justice Daly in an interesting opinion refers to many authorities on this subject.)    I have not overlooked the cases cited by the counsel for the parties requesting the appointment of Mr. Keen, but those authorities, or nearly all of them, were before the court in the *Matter of Owens* above referred to, and in my opinion, the rule laid down by the court in that case is the one which must govern the referee in the selection of the committee in the present proceeding.    Mr. Keen is first cousin of the lunatic, and under the principle of that decision is excluded from appointment as committee.    Mr. Olin is not a relation, and would not be entitled to succeed to his estate as heir-at-law, or next of kin."

Judge VAN BRUNT, on confirming the referee's report, made the following memorandum :—" Under the decision in the case of *Matter of Owens* (5 Daly, 288), I am compelled to confirm this report; but I cannot do so without expressing my dissent from the doctrine enunciated in that case, that next of kin are excluded from appointment as committees of the person or estate of lunatics.    I do not think the authorities will support such a doctrine."

*Michael H. Cardozo*, for the appellant.—A *relative* is always *preferred* as the committee of the estate and person of a lunatic rather than a *stranger*. (*Matter of Livingston*, 1 Johns. Ch.

436; *Lamoree's Case* [1860], 11 Abb. Pr. 274; *In the Matter of Taylor* [1842], 9 Paige, 611; Crary's Spec. Pro., vol. 2, ch. XVIII, p. 15, 2d ed.; Barbour's Chancery Practice, vol. 2, p. 236, Book V, ch. 6, 2d ed.; Wait's Practice, vol. 6, p. 426; Hoffman's Chancery Practice [1839], 1st ed., vol. 2, pp. 258, 260; 1 Bouv. Law Dic., p. 297.)

Our law in relation to persons of unsound mind comes from England, and the principles there determined, the rules there established, in the absence of legislation should govern here. The authorities in the courts of that country unite in giving the preference to a relative. (Elmer on Practice in Lunacy, 5th ed. [1872], p. 25; Phillipps on Lunacy, p. 281; Shelford on Lunacy, p. 131; 2 Law Lib. p. 83; Bacon's Abridg. Bouvier's ed., vol. 5, page 12, where it is said: "In the appointment of committees, relations, unless there is some specific objection, are preferred to strangers. It is no objection in modern practice, though it was so formerly, that the committee of the person is entitled, as heir-at-law, upon the death of the lunatic, to his real estate. That he is the next of kin to the lunatic, and may come in for a share of the personal property under the statute of distributions, has never been considered as an objection." Stock on Non Compos Mentis, p. 121, et seq.; 9 Law Lib. [N.S.] II., page 71; 1 Fonblanque's Eq. 53 [note o]; Petersdorff's Abm., 2d ed., vol. 5, p. 409 [1], where it is said that "relations are in general appointed in preference to strangers, unless some specific objection be urged;" *Dormer's Case* [1724], 2 P. Wm. 263, here the uncle of the lunatic was appointed committee; *Ex parte Ludlow* [1731], id. 635; *Ex parte Lyne* [1735], Cas. Temp. Talb. 142, the next of kin was, together with her husband, appointed committee of the lunatic's estate; *Ex parte Grimstone* [1772], Amb. 706, the heirs-at-law of the lunatic were entrusted with the custody of his estate; *Ex parte Cockayne* [1802], 7 Ves. 591 and note, the lunatic's brother of the half blood was made committee of his estate and person; *Ex parte Le Heup* [1811], 18 Ves. 221, where an uncle of the lunatic was made committee; *Ex parte Pickard* [1814], 3 Ves. & Bea. 127, here the lunatic's sister

was one of the committee; *In re Lord Bangor* [1818], 2 Molloy [Ir. Ch.], 518; *Ex parte Farrow, In re Adams* [1829], 1 Russ & Mylne, 112, in this case the Lord Chancellor granted the application of the sister of a lunatic and her husband to be appointed committee of the person and estate of the lunatic; *In the Matter of the Earl of Lanesborough* [1826], Lloyd & Goold Temp. Plunk. 503, here the heir-at-law of the lunatic was made committee of his estate; *In re Hussey* [1828], 1 Molloy, 226; *In re Persse* [1828,] 1 Molloy, 439; *In re Blair* [1836], 1 Mylne & Craig, 300; the heir-at-law of the lunatic was committee of her person and estate; *In the Matter of Webb* [1846], 2 Phillips 10, 532; *Re Watkins* [1846], 1 Coo., t. Cott. 225; *In re Meux* [1808], 2 id. 106, 107 [n]; *Leaf* v. *Coles* [1852], 1 DeG., McN. & G. 417, where it appears that a brother of the lunatic was appointed the guardian of his person and receiver of his estate; *Ex parte Mount* [1851], 21 Law Jour. Rep. [N.S.] Chanc. 221, the heir-at-law, who, together with one other person, was also next of kin, was committee of the person of the lunatic; *In re Pugh* [1853], 3 DeG. McN. and G. 416, where the father was made committee of the person and estate of his lunatic son; *In re French* [1868], 37 Law Jour. R. [N.S.], Chanc. 537, the sister of a lunatic and her husband were appointed such committee; *In re Strickland* [1871], L. R., 6 Ch. Ap. 226, the heiress-at-law and next of kin were made such committee; *In re Wynne* [1872], L. R. 7 Ch. Ap. 229, the lunatic's wife was made committee; *In re Scarlett* [1873], 8 id. 739, the committee of the person was the heiress-at-law and sole next of kin of the lunatic, and the committee of the estate was their son.)

*G. L. Rives*, for respondent.

CHARLES P. DALY, Chief Justice.—Where an unobjectionable person has been appointed by the referee, it is not the practice of the court to disturb the appointment, upon the ground that a relative ought to have been selected, or the converse, or that a better selection from among the persons named might have been made. The selection of the com-

mittee by the referee is a matter of judicial discretion, with which the court should not interfere, unless he has selected an improper person or one who is disqualified, or one whose situation is such as to warrant the belief that the interests confided to him may not be properly attended to. (*Creuze* v. *Bishop of London*, 2 Brown's C. C. 253; *Thomas* v. *Dawkins*, 3 id. 508; id. 1 Ves. jr. 452; *In the Matter of The Eagle Iron Works*, 8 Paige, 386.) These were cases of the appointment of a receiver, but the rule is the same in respect to the appointment of a committee of a lunatic. (*Lady Mary Cope's Case*, 1 Eq. Ca. Ab. 277 s. d. 3; s. c. 2 Ch. Cas. 239; *In re Lord Bangor*, 2 Molloy, 519.)

If the referee had, in the exercise of his discretion, selected Mr. Olin instead of Mr. Keen, there would be no ground for interfering; but it is evident from the referee's opinion, that he exercised no discretion as respect to Mr. Keen; that, being a first cousin of the lunatic, he regarded him as excluded from appointment as a committee under, as he said, the principle of the decision of this court. (*Matter of Owens*, 2 Daly, 288.) It was certainly not my intention to hold in that case that a relative who may be pecuniarily benefited by the lunatic's death is disqualified from being appointed the committee of his estate, but, in looking at the language I used, I can see that it may have conveyed that impression and misled. I meant to say that the court would exercise circumspection and care in appointing those who might be benefited by the lunatic's death, and whose interest and disposition it might be to lessen his comforts that his estate might be diminished as little as possible; not, however, that they were disqualified; which would have been disregarding a long line of cases in which relatives have been appointed from *Justice Dormer's Case* (2 P. Wm. 263) down to the present day. The rule is not that the relatives are to be preferred to strangers, nor strangers to relatives, but that the court in the particular case is to do that which is best for the lunatic, keeping in view the possibility of his recovery. "It is his benefit and comfort I am to take care of," said Lord Macclesfield, in *Justice Dormer's Case*, "and not to heap up wealth for the

benefit of his administrators, or next of kin." Where the custody of the person and estate is to be united in the same committee, a relative may take much more interest in looking after the lunatic's welfare and comfort, and feel more sympathy for him than a stranger would do. But whether a relative or a stranger is to be preferred should be determined in the particular case, in view of all the circumstances, and not by the application of any general rule, for there is none, except that heirs or next of kin are not disqualified, if the court or its officer, in the exercise of a sound judicial discretion, think proper to appoint one.

Mr. Olin is a gentleman known to the court, and one in every way qualified for the discharge of such a trust, and I feel very reluctant to interfere with his appointment. It is, however, said in the referee's opinion, that no question was raised at the hearing as to the integrity, capacity, or fitness of either of the gentlemen named ; and, as a large number of the relatives desired the appointment of Mr. Keen, it may be, for all that we know, that the referee, in the exercise of his discretion, would have appointed him, had he not considered him disqualified under the construction which the referee gave to our decision in the *Matter of Owens.* I think, therefore, that it will be better to refer the matter again to the referee, that he may be at liberty to select Mr. Keen, if, in the exercise of his discretion, he thinks it more judicious to do so.

VAN HOESEN, J., concurred.

Ordered accordingly.