## In re ANDREWS.

(Supreme Court, Appellate Division, First Department. April 10, 1908.)

1. INSANE PERSONS—APPOINTMENT OF COMMITTEE—JURISDICTION.

Code Civ. Proc. § 2320, provides that the jurisdiction of the Supreme Court shall extend to the custody of the person and the care of the property of a person incompetent to manage himself or his affairs in consequence of lunacy, etc., and section 2321 makes it the duty of the court to preserve the property of the incompetent from waste or destruction. Section 2322 provides that this jurisdiction must be exercised by means of a committee. Section 2339 subjects the committee to the control of the court with respect to the execution of the duties thereof, and expressly authorizes the court to remove the committee in its discretion. *Held*, that where there was no occasion for the continuance of an order of reference on application to remove the committee of the property of an incompetent, because it otherwise appeared that the unfriendly feeling and friction existing between the members of the committee were such that the estate was not being managed and controlled in the interest of the incompetent, the court had jurisdiction to vacate the order of reference, and recall the application and answering papers which had been referred to the referee, and remove the committee and appoint a new committee.

2. SAME—PROCEEDINGS FOR APPOINTMENT—NOTICE.

Though ordinarily notice of a petition for the appointment of a committee of an incompetent is required to be given to the husband or wife, if any, or to one or more relatives of the incompetent, or to a public officer specified in Code Civ. Proc. § 2324, yet the court acquires jurisdiction without such notice if sufficient facts for dispensing therewith are set forth in the petition or accompanying affidavits (section 2325).

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Insane Persons, § 51.]

3. SAME—QUALIFICATION.

The health and comfort of the incompetent and preservation of the estate are the primary considerations which should guide in the appointment of the committee and with respect to the continuance or removal thereof, and the consideration to which the claims of the next of kin and heirs of the incompetent are entitled is secondary, and, at most, merely renders it proper that they should be heard with respect to the appointment of a committee where they are themselves eligible, in which case, if they be equally well qualified, they should be given the preference.

4. SAME—PROCEEDINGS FOR APPOINTMENT—REFERENCE TO ASCERTAIN PROPER PERSON.

On appointment of a committee of the property of an incompetent, the practice applicable to the appointment of a committee of the person who

necessarily bears intimate relations to the incompetent of ordering a reference to ascertain a proper person to be appointed was properly dispensed with, since the question was merely one of the proper management of the estate.

5. SAME—COMPENSATION.

On appointment of a committee of the property of an incompetent, it was proper to authorize the committee to vote the stock of a corporation, a majority of which was owned by the incompetent, and to make the committee eligible to election as its president; but, before the committee is permitted to receive the salary of that office in addition to his compensation as committee, it should be approved by the court on application of the committee showing the services rendered and time necessarily occupied in performance of the duties of that office, as distinguished from the office of committee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Insane Persons, § 63.]

Patterson, P. J., and Scott, J., dissenting.

Appeal from Special Term.

In the matter of the guardianship of the person and estate of Blanche L. Andrews, an insane person. From an order (57 Misc. Rep. 86, 106 N. Y. Supp. 1096) entered therein, John E. Roosevelt, as one of the committee of the estate, and Nannie V. Roosevelt, sister and only heir at law of the incompetent, separately appeals. Modified and affirmed.

See, also, 107 N. Y. Supp. 1119.

Separate appeals from certain specified parts of an order of the Special Term, providing, in substance, that John E. Roosevelt and Constant A. Andrews, the surviving members of the committee of the estate of the incompetent, be removed as such committee, and prepare and file an account of their proceedings as such since the 6th day of January, 1907; and obtain their discharge; that Sylvester J. O'Sullivan be appointed committee of the estate in their place and stead, and that they turn over to him the property in their hands as such committee, and that he be empowered to vote 1,714 shares of stock in the Elkhorn Valley Coal Land Company belonging to the incompetent; that the orders of reference and appointment of special guardian in proceedings in regard to the incompetent or her estate pending before a referee be vacated; and that said proceedings be terminated or suspended by or merged in said order and combining three distinct proceedings herein upon which the referee has reported, and two which are still pending before the referee.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

John L. Cadwalader, for appellants.

D. Cady Herrick, for Sylvester J. O'Sullivan, the substituted committee.

LAUGHLIN, J. Blanche L. Andrews was duly declared incompetent in the month of October, 1903, and John Notman, John E. Roosevelt, and Constant A. Andrews were appointed committee of her estate on the 28th day of that month, and they qualified on the day following. Mr. Notman was a member of the bar, Mr. Roosevelt was brother-in-law to the incompetent, and Mr. Andrews was her husband. Her husband was appointed committee of her person at the same time and duly qualified. The accounts of the committee of the estate of the incompetent were judicially settled on the 10th day of March, 1905. There was no other accounting of the committee of the property of the

incompetent until the one to which reference will presently be made. On or prior to the 7th day of November, 1906, Notman and Roosevelt requested Andrews to join them in a petition for the judicial settlement of their accounts, but he refused, and on the 8th day of November, 1906, he and the incompetent verified a petition, dated on the 7th day of the same month, showing that since June, 1906, Notman and Roosevelt had excluded Andrews from participating in the management of the estate, and had assumed and exercised the right to manage it and to audit or pay or disallow bills contracted by the committee of the person of the incompetent for her support and maintenance, and had refused to audit proper bills, and that the condition of the incompetent had so improved that she was able to exercise an intelligent supervision over herself and her property, and was advised by her physician that a trip abroad would be beneficial to her health, and praying that the income of her property and the principal, if necessary, should be liberally expended for her comfort and convenience, and that the amount of money to be expended for these purposes should not be left to the majority of the committee, who had failed to sanction proper expenditures, and for an order for a settlement of the accounts of the committee of her property, and for the substitution of a trust company as such committee. The notice of motion for this relief was returnable on the 15th day of November, 1906. Affidavits were read in opposition to the motion, and on the 22d day of January, 1907, a special guardian for the incompetent was appointed, and it was referred to a referee to take proof and report with his opinion thereon. This is known as proceeding No. 1, and in it no evidence has been taken before the referee.

On the 9th day of November, 1906, Notman and Roosevelt verified a petition dated on the 7th day of the same month for a judicial settlement of their accounts. Their motion was returnable on the 14th day of the same month, but was adjourned and determined with the other motion to which reference has been made by an order of reference to the same referee on the 22d day of January, 1907, and appointing the same special guardian. Mr. Notman died on the 6th day of January, 1907, and no one has been appointed to succeed him. By leave of the court Roosevelt filed a supplemental account, bringing the accounting down to the death of Notman. Objections to the accounts were filed. This is known as proceeding No. 2. The referee took evidence in this proceeding, and made and filed his report on the 24th day of July, 1907, in which, in explaining why he passed upon certain controversies, he said:

"It is unhappily a fact that there was friction between Mr. Andrews and Mr. Roosevelt of a kind—whatever be the merits of the case—that has caused disturbance and litigation which must have been demoralizing, and certainly is greatly to be regretted."

Exceptions were filed to the report, but it was confirmed by the order from part of which the appeal is taken, and no question concerning the accounting is presented by the appeal.

On the 15th day of November, 1906, Nannie V. Roosevelt, who is the wife of John E. Roosevelt and the sister and only heir at law of the incompetent, duly verified a petition for the removal of Andrews

109 N.Y.S.—53

as committee of the person, containing allegations which, if established, would justify if they would not require his removal as committee of the person. This petition was returnable on the 19th day of November, 1906. The motion was adjourned from time to time until the 23d of January, 1907, when it was referred to the same referee, and on February 8th thereafter the same special guardian was appointed nunc pro tunc as of the day the order of reference was granted. This is known as proceeding No. 3. These three proceedings apparently were brought to the attention of the referee at the same time, and a stipulation was made by which proceedings Nos. 1 and 3 were to stand until after proceeding No. 2, for the accounting, was finished, and that then No. 3 should stand until No. 1 was finished. No further proceedings were had before the referee in proceeding No. 3.

It appears that Andrews and Roosevelt were unfriendly, and could not act in harmony, owing, among other things, to a difference in views with respect to the expenses incurred by Andrews as committee of the person of the incompetent, and during the period from January to the 14th of June, 1907, Andrews presented no bills to Roosevelt as one of the committee of the estate for payment, excepting for the sum of $1,750, but on that day he presented bills and vouchers therefor aggregating nearly $10,000, and requested payment. Roosevelt paid some of the accounts, and corresponded with Andrews concerning others, apparently with a view to obtaining information, and also questioning the necessity of some of the expenditures. On the 27th day of June, 1907, Andrews petitioned the court for an order directing the committee of the estate to reimburse him for the expenditures made, and fixing a monthly allowance to be thereafter paid to him as committee of the person for the care of the incompetent. This proceeding was referred to the same referee on the 8th day of July, 1907, and the same special guardian was appointed. The charges of neglect and failure on the part of Roosevelt to pay proper bills and to reimburse Andrews for expenditures made on account of the incompetent were such that the referee was directed to proceed with the reference from day to day. He did so, and reported thereon on the 23d day of July, 1907, and his report recommended that Roosevelt as committee of the estate be directed to pay upwards of $8,000 of the claims for maintenance of the incompetent, which he had failed to pay. The referee in his report, speaking of the lack of harmony between the two surviving members of the committee, said:

"Friction, most regrettable in the administration of an estate of this character, has arisen between Mr. Andrews and Mr. Roosevelt, which has been emphasized since the death of Mr. Notman, which took place during the month of January, 1907. This friction was of so acute a character that for several months bills incurred in connection with the maintenance of the committee's ward have not been paid. * * * Such friction and delay cannot fail to exert a most unwholesome influence upon the condition of the committee's ward, and should be avoided in the future."

Exceptions to the report were filed by Roosevelt, and a motion for its confirmation was made returnable at the same time as the motion for the confirmation of the report in proceeding No. 2, concerning the accounting. The order from part of which the appeal is taken confirms

the report of the referee directing the payment of the expenses incurred by the committee of the person, and fixing a monthly allowance of $1,500 to be paid to him. No question arises on the appeal concerning these matters.

There had been from time to time serious friction between the committee of the person and Mr. and Mrs. Roosevelt concerning the place of abode of the incompetent and visitations to her by them. The court had been appealed to, and had given directions on this subject by an order on the 18th day of December, 1906. On the 8th day of April, 1907, on another application, the court directed that the incompetent should not be removed from a sanitarium at Broadway and 261st street, New York City, without notice in writing to Mr. and Mrs. Roosevelt and to the special guardian, and also directed that Mrs. Roosevelt be permitted to visit her sister at certain specified times, and that Andrews be not present on such occasions. On the 26th day of June, 1907, Andrews verified a petition upon which he obtained an order to show cause, directed to Mr. and Mrs. Roosevelt or their attorneys and to the special guardian of the incompetent person, returnable on the 26th day of June, 1907, for the modification of the order of April 8, 1907, so as to permit him to select such residence for the incompetent as he or the court might deem suitable, without notice to Mr. or Mrs. Roosevelt or to the special guardian. This proceeding was also referred to the same referee at the same time that the last specified proceeding was referred to him. This reference was proceeded with, and on the 23d of July, 1907, the referee made his report, recommending that the order be amended substantially as prayed for. A motion to confirm this report was also made returnable on the 26th day of July, 1907. On the 28th day of August, 1907, the court appointed two alienists to examine the incompetent, and report as to whether the removal of the incompetent to her residence, No. 737 Madison avenue, during all or any portion of the year would be beneficial to her, and whether her mental malady was incurable, and to advise with respect to the reception by the incompetent of her husband, relatives, and friends as visitors. They reported, in substance, that her mental malady is probably incurable, but that the chances of recovery would be promoted by her retention in an institution similar to that in which she then was, and that visits to her should be regulated by the physician in charge. The court thereupon, and on the 23d of November, 1907, denied the motion to modify the order of April 8th. The denial of that motion is embraced in the order from part of which the appeal is taken, but no question with reference thereto is presented on the appeal.

The order from which the appeal is taken was made on the 23d day of November, 1907. In and by it the court at Special Term, of its own motion, vacated the two orders of reference then pending undetermined before the referee, and upon which no report had been made. These were the orders of reference in proceedings known as Nos. 1 and 3; the first being an application for the removal of the committee of the estate and the substitution of a trust company, and the other being an application for the removal of the committee of the person of the incompetent. The opinion of the learned judge who made the order from part of which the appeal is taken shows that he intimated to the

committee that he would remove them, and gave them (the other parties) an opportunity to agree upon another committee which they were unable to do. It is contended broadly by the learned counsel for the appellants that the court was without jurisdiction to make the order removing the committee of the estate and appointing a new committee. I do not agree with this contention, and am of opinion that the court had jurisdiction to remove the committee of the incompetent; it having come to the attention of the court that the interests of the incompetent required this course. In Matter of Griffin, 5 Abb. Prac. [N. S.] 96, it was unanimously decided by the General Term in this department that the court could always remove its officers, and that an order made on conflicting affidavits removing the committee of an incompetent person and appointing another in his place without an order of reference either to determine the facts or who would be a proper committee rested in the sound discretion of the court and was not even appealable, and the appeal therefrom was dismissed. In Matter of Bomanjee Byramjee Colah, a Lunatic, 3 Daly, 529, Chief Justice Daly traces the history of the jurisdiction of the court over the persons and estates of incompetents, and shows that it was the intention of the Legislature to delegate to the court the duty devolving upon the state as parens patriæ of incompetent persons, and to clothe the court with full authority to care for their persons and estates. Section 2320 of the Code of Civil Procedure provides, without limitation, that the jurisdiction of the Supreme Court "extends to the custody of the person, and the care of the property, of a person incompetent to manage himself or his affairs, in consequence of lunacy, idiocy, habitual drunkenness, or imbecility arising from old age or loss of memory and understanding or other cause;" and section 2321 makes it the duty of the court to preserve the property of the incompetent from waste or destruction, and to provide therefrom for the payment of his debts and for his safe-keeping, and maintenance and for the education, when required, of the incompetent person and his family. Section 2322 provides that this jurisdiction must be exercised by means of a committee. The succeeding sections of title 6 of chapter 17 of the Code of Civil Procedure regulate the proceedings by which the incompetency is to be determined and the committee is to be appointed in the first instance. In the case at bar it is to be borne in mind that, by the presentation of the petition originally and the adjudication of incompetency, the Supreme Court acquired full jurisdiction over the person and property of the incompetent. It is well settled that this jurisdiction of the court is general, and, although ordinarily notice of the presentation of the petition originally for the appointment of a committee is required to be given to the husband or wife, if any, or to one or more relatives of the person alleged to be incompetent, or to a public officer specified in section 2324 of the Code of Civil Procedure, yet the court acquires jurisdiction without such notice, if sufficient reasons for dispensing therewith are set forth in the petition or accompanying affidavits. Code Civ. Proc. § 2325; Matter of Demelt, 27 Hun, 480; Matter of Owens, 5 Daly, 288. See, also, Agricultural Ins. Co. v. Barnard, 96 N. Y. 525; Matter of Chapman, 43 App. Div. 231, 59 N. Y. Supp. 1025, reversed on another point, 162 N. Y. 456, 56 N. E. 994; American Mtge. Co. v. Dewey, 106 App. Div. 389, 94

N. Y. Supp. 808. Even with respect to the removal of trustees, over whom probably the court has not as extensive authority as over the committee of an incompetent, it was held by this court, and the doctrine was affirmed by the Court of Appeals in Disbrow v. Disbrow (46 App. Div. 111, 61 N. Y. Supp. 614), 167 N. Y. 606, 60 N. E. 1110, that the Supreme Court has general jurisdiction to remove trustees without proof of actual mismanagement, misconduct, or dishonesty "whenever the court can see that inharmonious or unfriendly relations exist between the trustees, or between them and the cestui que trust, and that by reason of such inharmonious and unfriendly relations material injury may and is likely to result to the trust estate." The decision in the Matter of Osborn, 74 App. Div. 113, 77 N. Y. Supp. 423, does not require a reversal of the order. It was there held that a proceeding for the removal of a committee should be entitled in the original proceeding, and that the court should proceed with great care and caution in removing one committee and appointing another, and that a relative who had notice originally, pursuant to section 2325 of the Code of Civil Procedure, should be permitted to be heard because a proceeding for the removal of the committee is in effect a continuation of the original proceeding of which all who were originally parties should have notice. There the Special Term removed a committee, and appointed the husband of the incompetent person the committee after the Special Term, presided over by another justice on a prior occasion, had decided that the husband was an improper person to be so appointed. In the case at bar the last two orders of reference were made by the learned justice who made the order from which the appeal is taken. By the petitions on those applications, and by the report of the referee on the accounting and the two other proceedings on which he reported, the court was fully informed with respect to the controversies between the members of the committee of the estate and concerning their respective relations to the incompetent and her relations to her husband and to her sister. The health and comfort of the incompetent and the preservation of her estate are the primary considerations which should guide the court in the appointment of the committees, and with respect to the continuance or removal thereof, and the consideration to which the claims of the next of kin and heirs of the incompetent are entitled is secondary, and at most merely renders it proper that they should be heard with respect to the appointment of a committee where they are themselves eligible for such appointment, in which case, if they be equally well qualified, they should be given the preference. Matter of Ann Owens, an Idiot, 5 Daly, 288; Salisbury's Case, 3 Johns. Ch. 347; Matter of Page, a Lunatic, 7 Daly, 155; Parsee Merchant's Case, 11 Abb. Prac. (N. S.) 219; In re Mason, 1 Barb. 436–441. The facts shown on the application for the removal of the committee of the estate were sufficient, if established, to justify the order removing the committee. As has been seen, the court could, on the presentation of the petition, have decided the question, and have made an order without referring the matter. The object of the reference was to inform the court concerning the facts. It was not essential that the petition should be true with respect to every fact. Nor were the members of the committee entitled to a hearing with respect to any particular charges. If it ap-

peared to the court on the application or by the report of the referee that it was for the interest of the incompetent that the committee should be removed, the court not only had jurisdiction, but it was its duty to make the order. The committee is subject to the control and direction of the court with respect to the execution of his duties, and the court is expressly authorized by statute to remove him in its discretion (Code Civ. Proc. § 2339). The fact that the justice presiding when the orders of reference were made on the applications for the removal of the committees was not the same justice who presided when the reports of the referee on the other three orders of reference were brought to a hearing is not material. It was the same court. The parties in interest were all before the court, and, although references were still pending on the applications for the removal of the committees, sufficient facts to warrant the court in exercising its jurisdiction appeared uncontroverted and uncontrovertible. If facts tending to show that a committee was acting improperly should be brought into another proceeding collaterally or incidentally, the court, of course, should not seize hold of such facts and base final action thereon, unless it clearly appears that they could not be controverted, for the committee should be given an opportunity to be heard concerning anything that might be explained. Here, however, there was no occasion for the continuance of the order of reference on the application to remove the committee of the property because it clearly appeared that the unfriendly feeling and friction existing between the two surviving members of the committee were such that, not only was the estate not being managed and controlled in the interest of the incompetent person and for her comfort and welfare, but her comfort and happiness seemed to have been secondary considerations. The court, therefore, I think was justified in vacating that order of reference, and calling unto itself the petition and answering papers which had been referred to the referee, and in removing the committee. If the committee would not have just cause for complaint, had the court on that petition acted originally without referring it, they cannot now complain that the court has recalled the petition and acted upon it. The committee had notice, at least by the opinion of the court filed before the settlement and entry of the order, that the court intended to make the order, and they were informally given an opportunity to agree on a new committee, and were heard on the settlement of the order. The court, therefore, neither exceeded its jurisdiction nor abused its discretion. If the court had jurisdiction to remove the committee, it must follow that it had jurisdiction to appoint another committee; for otherwise the property would remain without even a custodian, and there would be no one to whom the outgoing committee could account. The court, I think, had a right acting upon its own information to appoint a committee. The committee appointed was of the property, and therefore the practice applicable to the appointment of a committee of the person who necessarily bears intimate relations to the incompetent of ordering a reference to ascertain a proper person to be appointed was properly dispensed with, for the question was merely one of the proper management of the estate. See Matter of Lamoree, a Lunatic, 32 Barb. 122; Matter of Cooper, 105 App. Div. 449, 94 N. Y. Supp. 270. It was likewise entirely proper for

the court to authorize the committee to vote on the stock of the Coal Land Company, a majority of which is owned by the incompetent, and to make him eligible to election as its president; but the court had not before it sufficient information to enable it to determine the question as to whether the committee should receive such salary or other compensation as president of the company, in addition to his commissions as committee, as might be fixed by a board of directors to be elected by himself. Before the committee is permitted to receive such salary to his individual use, it should be approved by the court, on application of the committee showing the facts with respect to the services rendered and time necessarily occupied in the performance of the duties of that office as distinguished from the office of committee. See Elias v. Schweyer, 13 App. Div. 336, 43 N. Y. Supp. 55. The order should be modified in this regard accordingly.

I am also of the opinion that the court should not have summarily vacated the order of reference, and have denied the motion for the removal of Andrews as committee of the person of the incompetent. The charges are sufficiently grave to require an investigation. In that regard, therefore, I think the order should be modified by striking out that part thereof which vacates such order of reference, and denies the motion for his removal.

It follows that the order should be modified as already indicated, and, as thus modified, affirmed, with costs to all parties, payable by the committee out of the estate.

McLAUGHLIN and HOUGHTON, JJ., concur.

PATTERSON, P. J. I am not able to concur in the affirmance of this order even with the modifications directed by the majority of this court; but, if the order is to stand at all, those modifications are properly required. The majority of my associates are of the opinion that the court at Special Term should not have vacated the order of reference, and denied the motion relating to the removal of Mr. Andrews as committee of the person of the incompetent. The charges against Mr. Andrews, all agree, are sufficiently grave to require investigation. The ground upon which Mr. Roosevelt as committee of the estate of the incompetent has been removed is only the inharmonious relations existing between himself and Mr. Andrews. There is no proof that the estate has diminished or suffered in any way by reason of such relations. On the contrary, the estate has been well cared for, and the accounts of the committee have been approved. If the charges against Mr. Andrews are proven and sustained, the inharmonious relations between him and Mr. Roosevelt may be explained readily, and Mr. Roosevelt's course may perhaps be commended, instead of meeting with reprobation and punishment.

I am of the opinion that the proceeding concerning the removal of the committee of the estate of the incompetent should have been heard and disposed of independently of the other matters. In arriving at this conclusion, I wish to be distinctly understood as referring only to the procedure which in the circumstances of this case it seems to me would have been proper and should have been pursued. The learned

justice at Special Term has followed his convictions, and undoubtedly acted upon what he considered on the facts presented as being for the real interests of the incompetent. But, on a very careful consideration of all that appears in the record now before us and all the facts to be gleaned therefrom, I agree with Mr. Justice SCOTT that the various motions and proceedings should not have been consolidated and disposed of as an entirety, but that each should have been separately carried on to its conclusion, and a separate order· made therein.

SCOTT, J. I am constrained to dissent. The question involved is not so much as to the jurisdiction of the court, but as to the proper procedure to be followed in invoking and exercising jurisdiction. As I read the record on appeal no motion for the removal of the committee was regularly before the court. Undoubtedly the court may and should act with expedition and even summarily, when it appears that an estate is being mismanaged and wasted. Nothing of that sort appeared in the present case. The report of the referee approving the committee's account, which was confirmed by the order appealed from, shows that the estate had been prudently managed and was well invested. No interest of the estate could have suffered if the matter of removing the committee had been allowed to rest until it could be brought before the court regularly upon due notice to all parties concerned.