(33 Misc. Rep. 532.)

In re WENDEL.

(Supreme Court, Special Term, New York County. January, 1901.)

INSANE PERSONS—COMMISSION—FINDINGS OF JURY—CONFIRMATION—JURISDICTION—STATUTES.

Code Civ. Proc. § 2320, declares that the jurisdiction of the supreme court extends to the custody of the person and the care of the property of a person incompetent to manage himself or his affairs in consequence of lunacy, idiocy, habitual drunkenness, or imbecility arising from old age or loss of memory and understanding, or other cause. *Held*, that the supreme court has no jurisdiction to confirm the finding of a jury, on a commission to inquire whether W. was a lunatic, and incompetent, by reason of such lunacy, to manage herself or her affairs, that such person "was incompetent, and, in consequence thereof, unable to manage herself or her affairs," since the jury failed to find that she was incompetent by reason of lunacy.

Action by John G. Wendel for the issuance of a commission to determine whether Georgiana G. R. Wendel was a lunatic, and was incompetent, by reason of such lunacy, to manage herself or her af-

fairs. On application to confirm the findings of the jury on such commission. Motion to confirm denied.

Thompson & Koss (Bartow S. Weeks, of counsel), for petitioner.
William L. Snyder, for Georgiana G. R. Wendel.

FITZGERALD, J. This is an application to confirm the findings of the sheriff's jury upon a commission issued in the above-entitled action on the 10th day of September, 1900. The petition of John G. Wendel for the appointment of such commission, filed September 10, 1900, recites: "That the said Georgiana G. R. Wendel is incompetent to manage herself or her affairs by reason of loss of memory and understanding arising from illness, having been in that condition for six years last past, and that, as he is informed by Dr. Egbert Guernsey, who has attended to his said sister as her physician for twenty years last past, it is not probable that said Georgiana G. R. Wendel will ever become competent to manage herself or her affairs." Commissioners were thereupon duly appointed to inquire, among other things, "whether the said Georgiana G. R. Wendel, of the borough of Manhattan, city, county, and state of New York, is a lunatic, and is incompetent, by reason of such lunacy, to manage herself or her affairs." The precept directed to the sheriff required him to summon a jury "to inquire of the lunacy of the said Georgiana G. R. Wendel." Proceedings were had in the city of New York on the 24th and 26th days of September, 1900, and on the 2d, 5th, 9th, and 12th days of October following. It appears that on the inquisition returned the words, "a lunatic and of unsound mind, and does not enjoy lucid intervals," were stricken out, and that the jury found as follows: That Georgiana G. R. Wendel, at the time of taking this inquisition, is incompetent, and, in consequence thereof, is unable to manage herself or her affairs. They further found substantially that they were unable to say whether or not, while being so incompetent, she had alienated any lands or tenements; that she was then about 48 years of age, and unmarried; that her father and mother were both dead; that she had one brother and five sisters, her nearest heirs and next of kin, who would be entitled to whatever estate she may own in fee in equal proportions in case of her death, and that there were no issue of deceased brothers or sisters; that the interest of the said Georgiana G. R. Wendel in lands and tenements situated in the boroughs of Manhattan and Brooklyn was about the sum of $236,042.86, and that the issues and profits by the year were worth about the sum of $10,335, and that she was also entitled to the income for life of a lot of land and building thereon erected, known as "No. 711 Broadway," in the borough of Manhattan, the value of which was about $75,000, and the issues and profits thereof by the year were worth about $3,750; that her personal estate was worth about $106,169.14. The proceedings were, to some extent, irregular, and a great many objections have been interposed to the confirmation of the findings. The most important of these, to my mind, is the objection taken to the failure of the jury to find that respondent was incompetent by reason of lunacy. This being a proceeding under the statute, involving the

liberty and property of the respondent, great care should be exercised by the court to the end that the statutory requirements are strictly complied with. The jury practically ignored the requirements of the statute, and established some test or standard of their own, and from that standard found "that she was incompetent, and, in consequence thereof, unable to manage herself or her affairs." The jury, it is true, found she was incompetent, but they failed to find that such incompetency was the result of lunacy, or of an unsound mind. Under the provisions of section 2320 of the Code of Civil Procedure the court is clearly without power to confirm the finding of the jury unless the finding is either in the words of the statute or their equivalent. That part of section 2320 applicable to the question under consideration is as follows:

"The jurisdiction of the supreme court extends to the custody of the person, and the care of the property, of a person incompetent to manage himself or his affairs, in consequence of lunacy, idiocy, habitual drunkenness, or imbecility arising from old age or loss of memory and understanding, or other cause."

The finding of the jury in this case cannot be considered as a compliance with the statute. Jurisdiction to confirm is conferred upon the court in proceedings of this character only where the inquisition states that the person is incompetent to manage his or her affairs in consequence of lunacy, idiocy, habitual drunkenness, or imbecility arising from old age or loss of memory and understanding, or other cause. The authorities both here and in England for over a century hold such finding insufficient. In the Case of Cranmer, 12 Ves. 445, the lord chancellor (Erskine) said:

"But let the commission and the verdict be congruous upon the face of the record. That cannot be unless the verdict is either in the words of the commission or in equivalent words. The right to traverse the verdict is admitted. Could the jury find a special verdict stating that they could not say whether he is a lunatic or not, and returning the evidence back to me, as other juries return the evidence to the court, and could I, upon a special verdict, say the man is a lunatic? I could not. I have no authority to act upon his liberty and his property except upon a verdict expressed in legal words."

And in the Case of Holmes, 4 Russ. 186, the lord chancellor (Lyndhurst) pronounced the following opinion:

"Here the jury, having merely found generally that, partly from paralysis and partly from old age, this gentleman's memory is so much impaired as to render him incompetent to the management of his affairs, go on to say, 'And consequently he is of unsound mind.' I am not satisfied that the consequence follows necessarily from these premises, and, unless I were satisfied that the consequence does follow necessarily, I cannot allow the verdict to stand."

The law in this state on the subject is clearly defined in Re Morgan, 7 Paige, 237, 238, by Chancellor Walworth, who said:

"It is not every case of mental weakness or imbecility, however, which will authorize this court to exercise the important power of depriving a man of his liberty and of the possession of his property. * * * To authorize the court, therefore, to act on an inquisition upon the presumption that the mind had become so far impaired as to resemble a state of idiocy, the jury should in terms find * * * that he is of unsound mind, and mentally incapable of governing himself or of managing his affairs. If the jury, upon their oaths, are not able to go thus far, he ought not to be deprived either of his liberty or the control of his property."

And further on, referring to the Case of Cranmer and the Holmes Case (page 238), he continued:

"Lord Lyndhurst set aside the inquisition, and directed that a new commission should issue. And I agree with him that it is unsafe in such cases to permit a departure from the technical form of finding that the party is of unsound mind, and mentally incapable of governing himself or of managing his affairs."

In Re Mason, 1 Barb. 439, the following is the language of the court:

"The earlier chancellors of England, in the exercise of their jurisdiction over persons incapable of taking care of themselves, confined themselves to cases of strict idiocy and lunacy. Accordingly, Lord Hardwicke, in the case of Ex parte Barnfley, 3 Atk. 168, held an inquisition which found that the alleged lunatic, from weakness of mind, was incapable of governing himself or his estate, to be insufficient."

The judgment in Re Morgan, supra, was further cited and approved. In Re Brugh, 61 Hun, 196, 16 N. Y. Supp. 551, the court said:

"The statute, which is declaratory of the rule of the common law, in terms confines the jurisdiction of the court, in this respect, to the case of a person incompetent to manage his affairs by reason of lunacy, idiocy, or habitual drunkenness. Code Civ. Proc. § 2320."

It is claimed that these decisions were all prior to the amendment to the Code (Laws 1894, c. 504), and that since such time they ceased to be controlling. This amendment adds the following words to section 2320, Code Civ. Proc.: "Or imbecility arising from old age or loss of memory and understanding, or other cause." The power of the court is clearly extended by the amendment, but it is still confined within bounds; and for the purpose of ascertaining what these bounds are the earlier adjudications have, it must be admitted, a most important bearing. It has been uniformly held that the finding of incompetency, unqualified by any statement as to its cause, was not enough to warrant the deprivation of liberty or property; and, applying this principle to the case at bar, it is difficult to conceive what, if any, force can be attached to the conclusions of the jury. Counsel for petitioner further contends that an inquisition should not be set aside for mere irregularity when there is room for doubt of the lunacy of the person concerned, and cites in support of this proposition Lamoree's Case, 11 Abb. Prac. 274, and submits that an examination of the testimony herein will satisfy the court, in the exercise of a sound discretion, that justice in the case requires the appointment of a committee. Without passing upon the question of the power of the court to ignore all irregularities upon testimony establishing lunacy to a moral certainty, leaving no reasonable room for doubt, I cannot say, after a careful examination of the evidence taken before the commissioners, that its probative force is so convincingly conclusive. No good purpose would be served by a discussion of the other propositions presented on the argument and in the briefs; and, for the reasons stated, the motion to confirm must be denied.

Motion denied.