## In the matter of WILLOUGHBY, a lunatic.

Where the wife of a lunatic, as the committee of his person, applied for an allowance, out of his estate, for the support of her daughter by a former marriage, upon the ground of an alleged ante-nuptial agreement of the lunatic to support such daughter ; *Held* that the alleged agreement, if made, being by parol merely, was not binding on the lunatic or his estate.

And it not appearing to the court to be probable that the lunatic, under the circumstances of his estate, would have continued to support his wife's daughter, if he had retained his reason and the control of his own property; *Held* that it was improper to make an allowance for that purpose out of his estate, in the hands of the committee.

*Held also*, that the court of chancery had the power to direct an allowance out of the income of the estate of the lunatic, for the support of his step-daughter, if the income of the estate was more than sufficient for the support of the lunatic, and of the members of his family who had a legal claim upon him for support ; upon its being established, to the satisfaction of the court, that the lunatic himself would have provided for her support, if he had continued legally competent to manage his own affairs.

Where the income of the estate of a lunatic is more than sufficient for the support of himself, and for the support of those members of his family for whom he is legally bound to provide, the court of chancery may make an allowance, out of such income, to his near relatives who are in need of assistance.

It is a matter of course to make such allowance in favor of the children, or other descendants of the lunatic, who will inherit his estate in case of his death, and where there is but little or no hope of his recovery.

But *it seems* that, in case of such an allowance, adult children in whose favor it is made, and who are competent to support themselves, will be required to stipulate that the amounts advanced to them respectively, under the order of the court, shall be brought into hotchpot, in the distribution of the lunatic's estate, upon his death, if any part of such estate shall come to them under the statute of distributions.

The court, in all such cases, acts for the lunatic, in reference to his estate, as it supposes the lunatic himself would have acted, if he had been of sound mind.

UPON the execution of a commission of lunacy, W. Willoughby was found to be a lunatic ; and his wife was appointed the committee of his person only, and W. W. Sweney was appointed the committee of his estate. An order was also made referring it to a master to inquire and report what sum was proper to be allowed to the wife of the lunatic, as the committee of his person, for his and her support; in addition to the use of his

In the matter of Willoughby.

dwelling house and appurtenances. The wife now presented a petition to amend the order of reference, so as to include an allowance for her daughter by a former husband; the lunatic having no children or descendants, and his next of kin being brothers and sisters, and children of deceased brothers. The claim of the petitioner was founded upon an alleged ante-nuptial agreement of the lunatic, that the daughter of the petitioner, who was twenty-one years of age, should reside in his family and be supported by him. The court having required notice of the application to be given to the committee of the estate, and to one of the nephews of the lunatic, upon whose petition the inquisition had been found, the latter appeared, to oppose the application.

*H. H. Cozzens*, for Mrs. Willoughby.

*D. Burwell*, for J. Willoughby, the nephew.

THE CHANCELLOR. There is no legal or satisfactory evidence to establish the supposed ante-nuptial agreement, even if such an agreement by parol would be binding upon the lunatic or his estate. Again, the statute is imperative that every agreement, promise, or undertaking made upon consideration of marriage, except mutual promises to marry, shall be void, if not in writing and subscribed by the party to be charged therewith. (2 *R. S.* 135, § 2.) No claim for the support of the step-daughter can therefore be founded upon the supposed agreement stated in the petition; and the lunatic is not bound to support her in any way. The question, then, arises whether the court ought to make the order asked for, under the circumstances of this case. In deciding that question, it is not proper to take into consideration the contested fact, that the services of this young lady are useful or necessary, as an assistant in the family. That is a proper subject for consideration by the master, under the original order of reference. For, if it is necessary that she should be employed as an assistant to take care of the lunatic, so as to render his situation more comfortable than it would otherwise be,

In the matter of Willoughby.

the master will of course make such an allowance, for the services to be rendered by her, as similar services which she has heretofore performed were actually worth.

How far the court ought to go, in making provision, out of the estate of a lunatic, for the maintenance of the relatives of such lunatic who have no legal claims upon him or his estate, has never yet been determined. It has frequently been decided, however, that where the income of the estate is large, so as to be much more than sufficient for the support of the lunatic and of those members of his family for whom he is bound by law to provide, the court may make an allowance, out of such income, to his near relatives who are in need of assistance. This is done almost as a matter of course in reference to the children of the lunatic, or other descendants who are presumptively entitled to his estate in case of his death ; and where there is but little or no hope of his recovery. I know such orders have been made by this court, within the last fifteen years, in three or four different cases ; where the estates were large and the incomes much more than sufficient for the support of the lunatics, and of all those who had a legal claim upon such lunatics for support and maintenance. But my present recollection is, that in all those cases, I required the adult children, who were competent to support themselves, to give a stipulation that the amounts advanced to them respectively should be brought into hotchpot, upon the death of the lunatic ; if any part of his personal estate should come to them under the statute of distributions. This principle, of considering the allowance as an advance, to be brought into hotchpot in distribution, has not, however, been extended to children of the lunatic who were sickly or decrepit, so as to give them a special claim upon the estate of the lunatic, for a support. The court, in such cases, acts for the lunatic, and in reference to his estate, as it supposes the lunatic himself would have acted if he had been of sound mind. (See *Ex parte Whitbread*, 2 *Mer. Rep.* 97. *In Re Feak; Shelf. on Lun.* 160.) Upon the same principle, Lord Lyndhurst made an allowance, out of the estate, for the education of a natural child of the lunatic. (*In Re Jodrell, Shelf. on Lun.* 161.) And in a more recent case, where

In the matter of Willoughby.

the only next of kin of the lunatic, were two nephews and a niece, Lord Cottenham made an order for an allowance to the two nephews, for their better education and support; the niece consenting to the same. (*In Re Blair*, 1 *My. & Cr. Ch. Rep.* 300.) The lord chancellor, in that case, however, said he entertained great doubts with respect to the power of the great seal to grant, and with respect to the propriety of granting, allowances to relatives of lunatics for whom the lunatic was not legally bound to provide; and that the practice which had been introduced by Lord Eldon, and subsequently followed, was one which could not be regarded with too much caution. But as there was no probability of the recovery of the lunatic, in that case, and the income of the estate was three times as much as was necessary for the lunatic's support, his lordship made the allowance asked for. And in the case of *The Earl of Carysfort*, (*Craig & Phil. Ch. Rep.* 76,) which came before Lord Cottenham, four years afterwards, he so far overcame the scruples which he had previously entertained, as to allow a retiring pension, out of the income of the estate, to an old personal servant of the lunatic, who had attended upon him for more than twenty years; being satisfied that the allowance was one which the earl himself would have approved, if he had been capable of acting himself.

In the case under consideration, if the income of the estate was much more than could be expended for the comfort and support of the lunatic and his wife, in the style in which they ought to be supported, I should not doubt the power of the court to make the allowance asked for; were it perfectly certain that the lunatic would make a provision for the support of this young lady, if he was legally competent to do so, considering the heavy charges to which his estate has been and may hereafter be subjected in consequence of these proceedings. Under the circumstances, however, I am not satisfied that he would consider her as having such a claim upon his bounty, if he was restored to his reason so as to be capable of acting with sense and discretion. From the affidavits, read in opposition to this application, it appears that he did not consider her as entitled to a support from him, or as standing in the situation of an adopted child. There

is also reason to suppose that she has some property of her own; which will be sufficient for her support, with the addition of what she can obtain by her own exertions. The application must therefore be denied. And as J. Willoughby was in the discharge of his duty in opposing this application, for the benefit of the lunatic's estate, his taxable costs must be paid by the committee, out of the estate of the lunatic in his hands; such costs to be taxed, upon due notice to the committee.