(56 Misc. Rep. 6.)

### In re ANDREWS.*

(Supreme Court, Special Term, New York County. September 14, 1907.)

1. INSANE PERSONS—GUARDIANSHIP—HUSBAND AND WIFE.

    The husband being the natural custodian of his wife's person, extraordinary facts should be presented to warrant the appointment of a guardian for the wife when she becomes mentally unfit.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Insane Persons, § 49.]

· 2. SAME—SUFFICIENCY OF EVIDENCE.

    Evidence examined, and *held* insufficient to require the appointment of a committee of the person of an insane wife to supersede the latter's husband.

In the matter of the guardianship of the person and estate of Blanche L. Andrews, an insane person. Proceedings for the settlement of accounts of John Notman and others as committee of the estate, etc., and

*See 106 N. Y. Supp. 1096.

for the removal of Constant A. Andrews as one of the committee of the estate and as committee of the person. Decision rendered.

Parker, Hatch & Sheehan, for Constant A. Andrews and Blanche L. Andrews.

George C. Kobber, for Nannie V. Roosevelt.

Grant Notman, for John E. Roosevelt.

DAYTON, J.   In October, 1903, on the petition of Constant A. Andrews, Blanche L. Andrews, his wife, was duly declared to be of unsound mind and an incompetent, and by an order of this court, filed about October 28, 1903, John Notman, John E. Roosevelt, and Constant A. Andrews were appointed committee of her estate upon giving a bond in the sum of $400,000, which was filed and approved, said order directing as follows:

"And they are hereby required to provide a suitable place of residence within the state of New York for the said Blanche L. Andrews and to see that she is properly cared for in a manner suited her condition, means, and social position."

Mr. Andrews was also appointed committee of the person. The incompetent's estate amounts to about the sum of $373,000, principally invested in the Elkhorn Valley Coal Lands Company, from which dividends of between $17,000 and $18,000 per annum are derived, and the investments of the balance of said estate realize about $5,000 per annum, making a total yearly income of about $22,000. In the event of the death of said incompetent the only persons who may be interested in her estate as her survivor are Constant A. Andrews, her husband, or Mrs Nannie V. Roosevelt, her sister, the wife of Mr. John E. Roosevelt, one of said committee of the estate. For a number of years prior to 1903 Mr. and Mrs. Andrews resided at No. 737 Madison avenue, in this city, the lease of which premises, at a yearly rental of $3,500, expires October next. The committee of the estate rendered an account November, 1904, which was judicially settled March 10, 1905. About November 8, 1906, Mr. Andrews petitioned this court, asking that the committee further account, that direction be given as to the management and expenditure of the estate, and that a trust company be appointed committee. On or about November 9, 1906, Messrs. Notman and Roosevelt also petitioned for a judicial settlement of their account. At or about the same time Mrs. Nannie V. Roosevelt petitioned for the removal of Mr. Andrews as one of the committee of the estate and as the committee of the person. About January 6, 1907, Mr. Notman died, thus creating a vacancy in the committee, which has not been filled. About January 22, 1907, these three proceedings were referred to Charles Bulkley Hubbell, Esq., by Mr. Justice Davis, and Mr Cornelius J. Sullivan was appointed special guardian of the incompetent therein. About March 6, 1907, Mr. Roosevelt moved for an order to limit and restrict the control of Mr. Andrews over the person of the incompetent, and to place such control either in the joint charge of Mr. Roosevelt and Mr. Andrews or of Mr. Roosevelt and Mr. Andrews and Mrs. Roosevelt, and directing that Mr. Roosevelt and his representatives should have full and free right of visitation and inspection over said

incompetent and her property, and enjoining Mr. Andrews from interfering with such visitation or inspection, and directing that all charges for the care and support of the incompetent be incurred in the name of the committee of her property; that before the committee of the person should incur any liability on behalf of the incompetent he should give reasonable notice and confer with Mr. Roosevelt.

Among the papers before me in said proceedings are the affidavits of Dr. Packer, Dr. Chapin, and Nellie Coghlan, a nurse, each verified about March 13, 1907, stating that the incompetent has suicidal impulses, also the affidavit of Bridget Wheatley, nurse, verified March 13, 1907, stating that seeing visitors has a bad effect upon the incompetent, who had manifested suicidal tendencies so that a carpenter was employed to fasten the windows of the residence in Madison avenue, that it was necessary to take her to a sanitarium, and that it was impossible to care for and safeguard her in a private house. Mr. Justice Davis on April 8, 1907, made an order directing that Mrs. Nannie V. Roosevelt be permitted to visit her sister three times each week, that during such visits Mr. Andrews should not be present, and that neither he nor his employés should interrupt nor interfere with such visits. Said order further provided that the present abode of Mrs. Andrews at Dr. Packer's Sanitarium should not be changed without first giving notice in writing to John E. Roosevelt, Nannie V. Roosevelt, and C. J. Sullivan, special guardian, nor without the further order of this court, and that all persons having the care of Mrs. Andrews or control of or access to her should abide by the terms of said order. Upon the brief of the attorney for Mrs. Roosevelt in opposition to any modification of said order he states:

"The incompetent is clearly in no condition to be removed to her home or to be taken care of in a private house. The doctors have stated that she has suicidal tendencies, and that such a tendency is likely to recur. If there was any probability that Mrs. Andrews would recover or would be benefited by a change of abode, Mrs. Roosevelt would be the first to suggest that a change be made."

And the special guardian in his affidavit of March 14, 1907, states:

"I heartily concur in the recommendation made by Dr. Flint that the incompetent should at present be visited but once a week."

On March 24, 1907, Dr. Austin Flint furnished a certificate as follows:

"The mental unsoundness is chronic, has existed, as I am informed and believe, for several years, and she is not likely to recover."

On July 14, 1907, Dr. Flint certified to the special guardian as follows:

"In view of my examination, I can only say that Mrs. Andrews seems very well off where she is [The Knolls], and that her surroundings seem satisfactory. In her present mental condition, however, I think she would be quite as well off in any other place where she would be as comfortably situated and as well cared for as she is at present. I saw Mrs. Andrews alone."

In the petition of Mr. Andrews for a modification of the order of April 8th appears the following:

"That for several months prior to February 29, 1907, the said Blanche L. Andrews became very much worse, and she displayed marked tendencies to

suicide, and it became necessary to fasten the windows of her said residence, 737 Madison avenue, in order to prevent a possible danger to her."

Mrs. Roosevelt's affidavit of July 3, 1907, states the following:

"That all the doctors—and there are many—who have seen her have said that Blanche L. Andrews is probably incurable, and, this being so, common sense would dictate that the least she is disturbed by any changes the better. They simply cannot do her any good, and deponent particularly urges upon the court that it will not disrupt the commitment to The Knolls, as deponent feels it is necessary for the safety of her sister that she should be in the charge of and care of some other than her husband."

In pursuance of an order made by me there is filed herewith the report of Allan McLean Hamilton, M. D., and Constantine J. MacGuire, M. D., which is as follows:

"In conformity with your directions contained in an order dated New York, August 29, 1907, hereto annexed, we, the undersigned, went to the sanitarium of Dr. Flavius Packer, known as 'The Knolls,' and situated at 263d street and Broadway, on two occasions, and there examined Blanche L. Andrews, wife of Constant A. Andrews, for the purpose of determining her mental condition, and of answering the questions submitted to us by yourself as follows: 'Whether in their judgment her removal to her residence, 737 Madison avenue, New York City, during all or any portion of the year, would aid in the recovery of her health, the restoration of her mind, or promote her mental or physical comfort and well being, or whether her mental malady is incurable, and, if so, which institution, hospital, sanitarium, or private residence in this state, would be for her best advantage as to attendance, care, and treatment, together with their opinions and recommendations as to her reception of her husband, relatives, and friends as visitors.' We would respectfully report that we have examined letters and other communications written and prepared by her, certain of her drawings, and the commitment papers and history of her case, as kept by the superintendent of The Knolls. Dr. Hamilton also had a conference with Drs. Lyon and Hoch, of Bloomingdale, regarding her condition while there previously. We found the said Blanche L. Andrews to be suffering from dementia, the result of an insanity which has lasted for several years, and that she has delusions of suspicion and persecution, with the fear that certain persons had intended to poison or maltreat her. The duration of her disease has been such that we believe an institution to be the best place for her mental and physical well being, and, although at present she does not express any violent symptoms of her disease, we feel that from the history and our examination that she is likely, if not properly guarded and restrained, to be dangerous to herself and others. The long duration of her mental malady and the existing dementia and present delusions belong to a chronic affection which is an incurable psychosis. We believe that her removal to her residence, 737 Madison avenue, New York City, would be most unwise. As she seems to be contented and is receiving good care, we see no reason for her removal to any other 'sanitarium, institution, hospital, or private residence,' although we have inquired into the possible advantage of other places to which she might be taken. It is our firm opinion that the 'reception of her husband, relatives, and friends as visitors' should be regulated by the physician of the institution in whose charge she remains. We would, however, suggest that the visits of her husband and other relatives, should be more restricted than at present; that she should not be taken out of the city and county of New York; that under no consideration should she be asked or urged to sign or copy written documents or letters of any kind, and that she should not be subjected to annoyance or made a party to any family quarrel. It is our belief that if there is the slightest chance for improvement it must depend upon an orderly, systematic life under the management of an institution physician with absolute freedom from stress of any kind. New York, September 12, 1907." .

Among the matters contested before Mr. Hubbell was one which concerned the sum of about $12,000 received by Mr. Roosevelt for salary as president of the Elkhorn Valley Coal Lands Company since 1902. The incompetent had been president of that company, owning 1714 out of 3000 shares of its capital stock. On October 12, 1900, Mr. Notman wrote Mrs. Andrews as follows:

"The annual meeting of the stockholders passed off all right yesterday, and the board were re-elected. The meeting of the new directors, however, did not take place and was postponed until next Thursday, the 18th inst., at 11:30 a. m. Mr. F. E. Randall made a motion that the board of directors be permitted to create such a sinking fund as would, in their judgment, equal the decrease in the value of the capital stock caused by the exhaustion of the coal supply on the land of this company as it is mined out. The motion was voted down. The election of officers will come up at the directors' meeting next Thursday. Mr. Roosevelt expressed himself as desirous of assisting you in every way he can, but there was some indication of his hesitation to re-elect you for president in your present inability to get out, and Mr. Roosevelt states that he is willing to take the office of president for you and to turn over the salary to you pending your disability. This would solve the matter, I think, satisfactorily, and, of course, Mr. Roosevelt would consider your views on all questions the same as though you were actually president."

Mr. Roosevelt holds in his own name 210, and Mr. Devlin, of Mr. Notman's office, 14 shares, of said stock, concededly belonging to Mrs. Andrews, and each of said gentlemen has voted on such stock at several annual meetings since 1900. Regarding the retention of salary as president of the Elkhorn Valley Coal Lands Company, which Mr. Andrews claims should be refunded, with interest, Mr. Hubbell, the referee, reported July 19, 1907, as follows: That after the election of Mr. Roosevelt as president in 1902, down to and including September, 1903, Mrs. Andrews received each month Mr. Roosevelt's check for one-half of the amount of salary, and that from October, 1903, Mr. Roosevelt has received and retained the entire salary at the rate of $2,500 per year, and that Mr. Roosevelt was under no obligation to pay any part of said salary to Mrs. Andrews, and that "the duties of Mr. Roosevelt as president were not associated with his functions as committee in any such way as to impress any trust relation upon the moneys so received by him." Referring to Mr. Notman's letter, the referee says:

"It does not appear that Mr. Notman had any authority to give such assurance. Even though he may have thought it was binding upon Mr. Roosevelt, it does not appear that there was any consideration proceeding from Mrs. Andrews at any time or from her committee to Mr. Roosevelt that required the return or payment of such salary to Mrs. Andrews' estate. The business of the company prospered under the administration of Mr. Roosevelt. Its dividends were increased. * * * There was no obligation on the part of Mr. Roosevelt because of his relation to the estate of his ward to undertake the administration of the affairs of the Elkhorn Company. The management of its affairs was entirely different and separate, and the salary earned by Mr. Roosevelt cannot be deemed in any sense extra compensation fixed by him without the intervention and approval of the court"—citing Matter of Fidelity Loan, Trust & Guar. Co., 23 Misc. Rep. 211, 51 N. Y. Supp. 1124.

In addition, it may be said that, when Mr. Roosevelt accepted Mr. Notman's suggestion, Mrs. Andrews had not been declared an incompetent, and it is fair to assume that all parties hoped and so believed

106 N.Y.S.—2

that within a reasonable time she would be restored to health. These hopes were not realized, and I see no good reason why Mr. Roosevelt should act as president indefinitely, and pay all his salary to the incompetent's estate. I doubt if any such agreement was contemplated when Mr. Notman wrote his letter upon which Mr. Roosevelt acted. The expenses incurred through these inharmonious relations should not be lost sight of. Nearly $700 has been expended on the coming in of the report of Mr. Hubbell, dated July 23, 1907. There was an appeal to the Appellate Division in Re Notman, 103 App. Div. 520, 93 N. Y. Supp. 82, as to the compensation of the committee of this estate. In the matter of the judicial settlement of the account in 1904 the expenses were nearly $2,600, and on the reference to modify order the expenses were nearly $300, and the estate may be subject to the allowances to counsel for Mr. Roosevelt, for Mrs. Roosevelt, for Mr. Andrews, and for the special guardian.

The death of Mr. John Notman was a public loss. Had he lived, it is probable that the lamentable conflicts in the execution of this trust would not exist. Their continuance is intolerable and the court is amply justified in exercising its power to end them. On the part of Mr. and Mrs. Roosevelt much opposition is manifested as to the continuance of Mr. Andrews as committee of the person of the incompetent. The proofs before me do not establish grounds for interference by the court with the lawful relations of Mr. and Mrs. Andrews as husband and wife, except as made necessary by her unfortunate malady. He is the natural custodian of her person, and is presumptively most deeply interested in her welfare and happiness. Extraordinary facts should be presented before the court will interfere with that relation whether one or the other becomes mentally unfit. The record here does not disclose any such extraordinary facts. If Mr. Andrews has lived (according to the judgment of Mr and Mrs. Roosevelt) extravagantly, depending latterly in the main upon his wife's income, his answer is that their mode of life has been within their joint income, and there are analogous cases which hold that such application of the income of an incompetent's estate is not improper. Benedict v. Sliter, 82 Hun, 190, 31 N. Y. Supp. 413; In re Heeney, 2 Barb. Ch. 326; In re Willoughby, 11 Paige, p. 257. A motion was made before me at part I in July 1907, for a modification of the order made by Mr. Justice Davis April 8, 1907, and for other relief. Reference thereon was made to Mr. Charles Bulkley Hubbell, who reported July 23, 1907, upon which report, on August 5, 1907, I directed the entry of an order for the payment to the committee of the person the sum of about $8,000, and referee's stenographer's, and special guardian's fees amounting in all to about $700, leaving the other portions of said report and the other motions before me in this matter to be determined. Before his departure for Europe, Mr. Justice Davis expressed his preference that the questions here involved be considered by any other judge, otherwise I should have asked their reference to him. The relation to and power of the court over the persons and estates of incompetents has been set forth by the late Charles P. Daly, chief justice of the court of common pleas, in the Matter of Colah, 3 Daly, 529, where the following language was used:

"It may be said in general terms in relation to the nature and extent of this jurisdiction that the care and custody of a lunatic and of his estate necessarily imply both the right and the duty on the part of the court to do in respect to either whatever is most conducive to his interest; to see, in respect to his person, that he is maintained as comfortably as his unfortunate situation will admit of and his pecuniary resources will allow, that everything is done that can be done by care, skill, and medical treatment to promote his general health, or which will or may contribute to the restoration of his reason. His interest is the chief consideration, and therefore great care has always been taken not to intrust the custody of his person or his estate to those who may be pecuniarily benefited by his death, or whose interest it is to keep the property from diminishing, unless the officer exercising the power is satisfied that it would be to the advantage of his bodily and mental condition that those who stand in the relation to him of blood and natural affection should have the custody and care of him. Nor will the interest of heirs or next of kin be at all considered in any outlay that may be made for his comfort or benefit, or in determining what is most conducive to his interest, either in the care of his person or in the management of his estate."

See, also, Matter of Owens, 5 Daly, 288, and Matter of Page, 7 Daly, 155.

These adjudications present a compendium of the law on this subject. More recent decisions are the Matter of Demelt, 27 Hun, 480, Matter of Osborn, 74 App. Div. 113, 77 N. Y. Supp. 423, and Matter of Arnold, 76 App. Div. 126, 78 N. Y. Supp. 772. I have twice visited Mrs. Andrews at The Knolls, once alone and once with Mr. Andrews. I have read the voluminous record in all the proceedings since the appointment of Messrs. Notman, Roosevelt, and Andrews, all the briefs of counsel and have heard them orally. All the parties in interest, including the incompetent and the special guardian, are before the court, and I am convinced that the appointment of a referee to report as to the person to be selected as the committee of the estate in the place of Messrs. Roosevelt and Andrews would involve useless time and expense, and that the provisions of section 2339 of the Code of Civil Procedure should be now invoked. In Re Cooper, 105 App. Div. 450, 94 N. Y. Supp. 270, controversy arose as to the appointment of the committee of the person. The incompetent was able "to decide upon the manner of living which gives him the greatest happiness and comfort." The committee named was a stranger who was vigorously objected to by the relatives, and the court said:

"In view of all the conditions shown to exist, the interests of the parties, including the incompetent himself, will be best safeguarded by a thorough inquiry as to the qualifications of the different persons suggested and as to the verity of the allegations concerning them in the conflicting affidavits."

In the matter at bar Mr. Andrews' right to remain as committee of the person is, I think, incontestable. He desires to retire as one of the committee of the estate. In Disbrow v. Disbrow, 46 App. Div. 111, 61 N. Y. Supp. 614, affirmed 167 N. Y. 606, 60 N. E. 1110, the court cited May v. May, 167 U. S. 310, 17 Sup. Ct. 824, 42 L. Ed. 179, as follows:

"The power of a court of equity to remove a trustee and to substitute another in his place is incidental to its paramount duty to see that trusts are properly executed, and may properly be exercised whenever said state of mutual ill feeling growing out of his behavior exists between the trustees or between the trustee in question and the beneficiaries that his continuance in

office would be detrimental to the execution of the trust, even if for no other reason than that human infirmity would prevent the co-trustee or the beneficiaries from working in harmony with him, and although charges of misconduct against him are either not made out or are greatly exaggerated."

And proceeded to say:

"The evidence introduced upon the trial discloses that hostility to a marked degree exists between Griffin and George (the trustees) and also between Griffin and this plaintiff (the cestui que trust); and it is apparent that this feeling is such as to prevent the hearty co-operation between the two trustees which should be present in order that they may properly manage the property committed to them. To permit them to act as trustees would tend in no small degree to jeopardize the trust estate and to defeat the object of the trust."

This principle applies with peculiar force here. There is no claim that the finances of this estate have been mismanaged, or that it is not intact, but the trust is one which involves the care not only of the property but of the person of a helpless woman, whose few lucid moments should be freed from the disagreements of those appointed to provide for her comfort and welfare out of her own funds. If Mr. Andrews had not suggested his own retirement as committee of the estate, there would be no embarrassment in the removal of the surviving committee, for the reason that their relations are such as to render their cordial joint action out of the question. Mr. Roosevelt declines to voluntarily retire as committee on the ground that his doing so might be regarded as an aspersion. In substituting another in his place no reflection upon his character is intended, but his remaining tends to "defeat the object of the trust," to wit, the promotion of the well-being, mentally and physically, of Mrs. Andrews, and, in my opinion, on the indubitable facts this would fail were Mr. Roosevelt committee of the estate and Mr. Andrews committee of the person. The latter being entitled to continue, it follows that the former should be retired. I have unsuccessfully endeavored to have the parties and their attorneys agree upon medical experts and the selection of a committee of the estate. Such failure and refusal emphasize the deplorable antagonisms among those who should be united in this humane task, and render plain the duty of the court. I am besought by the parties to allow a renewal of the lease of No. 737 Madison avenue because the premises contain furniture and effects of which Mrs. Andrews is fond, and their removal would distress and grieve her, as she speaks frequently of her intention to return.

Relying upon the opinions as to her incurability, it might seem prudent to store and insure these articles, thus saving the larger part of $3,500 rental per year. The incompetent is entitled, however, to have her income bestowed in such manner as will contribute to her happiness, and so on this slender intimation the committee of the person should renew said lease for one year on the same terms. In September next the substituted committee of the estate may apply to the court for further instructions in this regard. Messrs. Roosevelt and Devlin should transfer the stock of the Elkhorn Valley Coal Lands Company standing in their respective names belonging to the incompetent to the substituted committee of the estate, who will be authorized to vote upon such shares, together with the other shares of the stock of said com-

pany belonging to the incompetent, aggregating 1,714 shares, as he shall deem for the best interests of the incompetent, and, in the event of his election as president of said company, he will be authorized to receive such salary as may be voted to such president in addition to his lawful commissions as such committee. I am informed that the Elkhorn Valley Coal Lands Company leased its lands in 1891 to the Empire Coal Company and to the Bottom Creek Coal Company for 30 years, by which leases or contracts it receives 10 cents per ton royalty each month, or a total royalty of about $36,000 per year. These contract leases have an unexpired term of about 14 years, and the yield of the coal mines, it is estimated, will continue about 40 years. The motion made by Mr. Randall at the stockholders' meeting of October 12, 1900, to wit, that a sinking fund be created in view of the possible exhaustion of the coal supply of the lands of said company, was an opportune business suggestion, all the more pertinent because of Mrs. Andrews' sad mental condition, requiring, in my opinion, the selection of a man not only for his integrity, but for executive business ability and experience, to serve as committee of this estate, who would give all the time requisite for its conservative conduct. A trust company, if appointed committee of the estate, could not, in the nature of things, be expected to give the detailed attention to its management as would an individual of the foregoing qualifications. To save the expense of another reference, Messrs. Roosevelt and Andrews will file their account since January 6, 1907, and obtain their discharge and the cancellation of their bonds, before me, within 10 days after the entry of the order hereon, at which time they will deliver to Sylvester J. O'Sullivan, Esq., who will be appointed the committee of the estate of the incompetent in the place of Messrs. Roosevelt and Andrews, all the property in their hands belonging to her, said substituted committee to furnish a bond in the sum of $400,000 to be approved by the court.

The order of April 8, 1907, above referred to, should be modified so as to provide that the present abode of Blanche L. Andrews at Dr. Flavius Packer's Sanitarium, Broadway and 261st street, New York City, be not changed without the further order of this court, and that until the further order of this court the visits to her by the committee of her person and her relatives and friends should be restricted to such persons and at such times as the physicians in charge of said sanitarium shall deem advisable and permit, and that said incompetent shall not be asked or urged to sign or copy written documents or letters of any kind. The referee's report, dated July 19, 1907, in the matter of the settlement of the account of the committee of the estate to January 6, 1907, should be confirmed, the exceptions thereto being overruled. The report of the referee, dated July 23, 1907, in the matter of the application of the committee of the estate to pay certain bills, has been confirmed in part and an order entered thereon. The recommendation therein contained as to the payments to the committee of the person should be confirmed to the extent of $1,500 in each and every month so long as the income of the estate shall not fall below the sum of $22,000 annually, out of which sums so paid to the committee of the person he shall defray all the charges of any institution in which the said incompetent shall be placed, and also all expenses of whatever kind for her sup-

port, maintenance and apparel, and the entire expenses of maintaining the household at No. 737 Madison avenue, including rent, water rates, and all other charges incidental to the maintenance of said household. The order should also provide that the committee of the person at the end of each month shall furnish to the committee of the estate proper vouchers showing the disposition by him of the moneys so received, and, further, if it shall appear at the end of any given year that funds shall remain in the hands of the committee of the person in excess of the sum required for the maintenance of the committee's ward and her estate, that the committee of the person shall turn over such sums as remain so unexpended to the committee of the estate. The order to be entered hereon should also direct the payment out of the income of all unpaid referee's and stenographer's fees, if any, in the references now pending, as well as any costs or allowances to counsel, and also to the special guardian, whose appointment will thereupon cease.

Except as hereinbefore indicated, all orders of reference in all the above proceedings should be vacated and proceedings therein terminated by the entry of the order hereon. Settle order upon notice.