In the Matter of the Accounting of BLANCHE IVORY CARPENTER, as Committee of D. CLINTON IVORY, Formerly an Incompetent Person.

County Court, Jefferson County, January 14, 1933.

*William H. Gilman,* for the committee.

*Edgar V. Bloodough,* for the former incompetent.

*Howard B. Donaldson,* for the surety on the committee's bond.

KIMBALL, J. D. Clinton Ivory was committed to the St. Lawrence State Hospital as an insane person on June 2, 1921. Blanche Ivory (later Blanche Ivory Carpenter) was his wife and on June 29, 1921, was duly appointed his committee. Bond was approved and filed and the committee qualified. D. Clinton Ivory was paroled from the hospital February 1, 1932, and on July 5, 1932, was discharged as fully recovered. This is an accounting by the committee. Objections to the account have been interposed by the former incompetent.

The former incompetent, before his commitment, ran a boot and shoe store at Adams, N. Y. The former wife continued the store for a short time and then sold it. Apparently all transactions by the committee were without court orders. On a former accounting the committee failed to charge herself with certain sums of money received by her from insurance policies on the life of the incompetent. The present account, however, includes these receipts with the exception of the sum of $100, which I find was actually received by her and with which she should be charged. There appear to be some small items with which the committee should be credited but these are offset by certain others with which she should be charged and which are not included in the account. It is practically agreed between the parties and I find that the committee should be charged with the sum of $9,120.35. I find that the committee should be credited with the sum of $7,019.65, leaving a balance in committee's hands of $2,100.70. The committee has taken credit for the sum of $2,450 for her own support from June 21, 1921, to June 24, 1928, at $350 per year. If she should be allowed this item, the estate would be wiped out.

The committee surrendered a life insurance policy on the life of the incompetent of the face value of $2,000 and received a certificate entitling the incompetent to a payment of $100 per annum for twenty years. Ten of these payments have been made to the committee and are charged in the account. There was, apparently, no authority for this transaction, but as the incompetent will eventually receive the face of the policy, the surrender of the policy and the receipt of the certificate are approved.

The only question of any moment is the one of the claim of the

committee for $2,450 for her support and maintenance, as wife of the incompetent. She has taken credit for this amount and the former incompetent objects to its allowance.

The evidence taken shows that after her husband's commitment, Blanche Ivory (Carpenter) continued the store, made sales, paid bills and collected outstanding accounts until August, 1921, at which time she sold the store for cash. She then worked in the store for the purchaser until some time in September, 1921. Afterwards she visited relatives in Parish, N. Y., returning to Adams later in the autumn and collected more of her husband's accounts. She then worked as a book agent until about March, 1922. There is no definite evidence as to her income during this period. She had approximately $2,000 of her own. From March, 1921, to November, 1927, Mrs. Ivory (Carpenter) had continuous employment as a nurse and received from fifteen to twenty-one dollars per week in addition to her maintenance. In November, 1927, she started an action for divorce against the incompetent, who was then in the State Hospital, and the judgment of divorce became final about March, 1928. On June 24, 1928, she married her present husband, Frank F. Carpenter.

The committee has been remiss in her duty of filing annual accounts as provided by law. Although she was appointed in 1921, it does not appear that she filed any account until 1929 and this account was so fragmentary that the state of the incompetent's estate could not be ascertained from it. In May, 1931, she had an intermediate judicial settlement for the purpose of reducing the amount of her bond. That account showed a balance on hand of $767.11. The order settling that account has been vacated. An account was made and sworn to September 30, 1932, which showed further receipts and disbursements and a balance on hand after crediting herself with $235.50 commissions and an item of $700.53 " due committee " of $75.91. These accounts were incorrect for the reason that the committee did not include all the moneys received upon account of certain life insurance policies. The final account in this proceeding includes those items and includes the item of $2,450 for support, for which she seeks credit. Whether she has actually used the money from the estate for her support, or whether it is still in her hands and she is seeking reimbursement for the expenditure of her own funds, does not clearly appear. It does clearly appear, however, that at no time did she ever ask for or obtain an order from the court to provide for her maintenance out of the incompetent's estate. It further clearly appears that she never, until now, sought to credit herself with anything for her

maintenance and then only when it was found that she had not charged herself with the full amount received by her as committee.

The care of an incompetent's property vests in the court and the jurisdiction of the court is exercised by and through the committee.. Section 1357 of the Civil Practice Act provides: "The court exercising jurisdiction over the property of either of the incompetent persons, specified in the last section, must preserve his property from waste or destruction; and, out of the proceeds thereof, must provide for the payment of his debts and for the safe keeping and maintenance, and the education, when required, of the incompetent person and his family."

The former wife and committee takes the position that she is entitled at this time to credit or reimbursement for $350 per year from June, 1921, to June, 1928, as a matter of right. I do not so understand the law. The court itself has been in control of this incompetent's estate, acting through Mrs. Carpenter, as committee. She had no authority to expend the principal of the estate for her maintenance without the authorization of the court. Had she applied to the court for such authority, the court could have examined into all the circumstances at the time and made such order as justice and equity might require. To hold that a wife may expend the estate to the exclusion of her incompetent husband, as a matter of right, is neither just nor equitable. The amount of the incompetent's estate, if any, to be used for the support of the wife must necessarily depend on several factors, such as the size of the estate, the financial status of the wife herself, her own earning capacity and other considerations. In other words, upon such application for maintenance by a wife, the court in its sound discretion and best judgment would allow or deny the application in whole or in part, after a careful consideration of all the circumstances to the end that the estate may be kept as nearly intact as possible for the incompetent and at the same time that the wife may be maintained, if necessary, from the corpus of the estate.

There are two reasons why Mrs. Carpenter should not be credited or reimbursed for the amount asked. The first is that under the circumstances, it was entirely unnecessary to diminish this small estate for her support. She is asking for maintenance even for the time after her divorce. Except from June, 1921, to March, 1922, she was well able apparently to support herself, receiving fifteen to twenty-one dollars per week, exclusive of her maintenance. From June, 1921, to March, 1922, she did not have steady employment although she earned something. She had about $2,000 of her own. Why should she not maintain herself while her husband was mentally ill and unable to earn? Had it appeared that she was

unable, by reason of age, illness or other incapacity, to maintain herself, a different question would have been presented.

The former incompetent, being fully discharged from the hospital, is now obliged to take care of himself. He is eleven years older. There would be no justice in turning over to his former wife the balance of his estate at this late day, where it appears without dispute that she has not only been well able to maintain herself but to make a considerable sum over and above her living expenses.

The second reason why allowance for support should not be granted is because, under the circumstances, I think that Mrs. Carpenter waived any obligation on her former husband's part to support her. From 1921 to 1932 she has made no claim upon his estate for her support and has only done so upon this accounting after it appeared that she had not accounted for all the funds which came into her hands as committee. The claim at this time has the appearance of an afterthought. During the period for which she claims support, she even divorced her husband and has remarried.

She has, in my opinion, by failure to assert her claim for support and by failure to apply to the court for an order during a period of eleven years, relieved her former husband of any duty to support her. (*Matter of Nutrizio*, 145 Misc. 626; *Krotosky* v. *Krotosky*, 169 App. Div. 850, 856.)

Counsel for the committee advances the position that it is due to the wife's management of the incompetent's affairs that there is now any estate. He argues that consideration should be given to the fact that she had large responsibility in the financial and personal affairs of her former husband. Conceding for the purpose of argument that she was a skillful manager and preserved the incompetent's estate, still she did so, not as his wife, but as agent for the court. She did no more than the law would require of any committee. Had she not wanted the responsibility, she need not have taken the appointment; but, having taken the responsibility, she is in the same position as any other committee would be and is entitled to the same compensation. Her duties as committee, imposed by law, should not be confused with her duties as wife to an unfortunate husband.

It appears that, as committee, Mrs. Carpenter did certain things and performed certain duties for a short time which may be considered to be beyond the ordinary duties of a committee. She may have, in addition to the commissions already allowed, the sum of $100 as additional compensation.

The committee's account on the intermediate settlement, verified May 21, 1931, failed to include $1,642.94 of insurance money which

she had received. Since then $300 more has come into her hands according to her last account. I also find that she received $100 of insurance money which was not charged to her at all. This makes a total of $2,042.94. The committee shall be charged with interest at four per cent upon this amount to be computed from the respective dates of the receipt by her of the respective amounts making up the total. It was her duty to invest this money for the benefit of the incompetent.

The committee will deliver the insurance policies and the insurance certificate, together with any other personal property of the former incompetent not mentioned in the account.

No costs to either party nor allowances. A final order, stating the account, in accordance with this memorandum and restoring the property to the former incompetent may be entered. The order may be settled on two days' notice.