In the Matter of the Estate of RICHARD M. FLEMING, Incompetent.

Supreme Court, Special Term, Kings County, January 10, 1940.

*Delatour, Kennedy & Miller* [*Walter Miller* of counsel], for Catherine Lanagan, petitioner.

*Albert C. Kelly* [*Lawrence T. Gresser* of counsel], for Isabel Fils, petitioner.

*Lewis, Marks & Kanter* [*Lloyd Kanter,* of counsel], for the committee.

BROWER, J. Two nieces of the incompetent move this court for orders directing the committee to pay to them certain sums of money for their support and maintenance. Both matters were referred to an official referee. On the hearing before the referee it was agreed by the committee and by the attorney for Catherine Lanagan, one of the petitioners, that she be allowed the sum of fifty dollars per month, the aggregate amount of the payments made to be chargeable as an advance against her distributive share in the estate of the incompetent if the incompetent should predecease her intestate and she should be a distributee thereof. The committee contested the claim of the other niece, Isabel Fils, but the referee, after a full hearing, has recommended that she be allowed the sum of seventy-five dollars per month.

The incompetent is a man eighty-three years of age and is presently confined to St. Peter's Hospital, Brooklyn, N. Y. His estate consists of personal property in an amount of approximately $80,000. His annual income is approximately $3,350, and the

committee estimates that there will be $7,500 required per year for hospitalization, medical and nursing attention, so that it will probably be necessary to resort to the corpus of the estate for his support and care. The petitioners are issue of a deceased sister of the incompetent and, as such, together with another sister, would be distributees of the incompetent, in case of his death intestate leaving them surviving, to the extent of one-half of the estate (one-sixth each), the committee, a brother of the incompetent, being entitled to the other half.

The power of the court to authorize allowances from the estate of an incompetent for the maintenance of collateral relatives to whom the incompetent owes no duty of support has been the subject of considerable discussion in the courts, and the rule is well established that they may be made upon the theory that the incompetent would, in all probability, assume the burden if he were sane. However, it must be recognized that applications of this kind are to be narrowed and discouraged rather than extended and encouraged, for, in authorizing the committee to make such payments, it is not the duty of the court, moved by its own generous impulses, to deal benevolently or charitably with the property of the incompetent, but it must act at all times for his benefit and as it supposes he would act were he of sound mind. In determining whether the incompetent, if sane, would contribute to the support of such persons, the court must be governed by the proof presented as to the needs and necessities of the person seeking the allowance; as to the relationship and intimacy which he and the incompetent bore to each other prior to adjudication; and as to the present and probable future requirements of the incompetent himself and those for whose support he may be legally liable, considered in relation to the size and condition of his estate — giving to each of these and any other pertinent factors such weight as from all the circumstances it finds the incompetent would give. (*Matter of Flagler*, 248 N. Y. 415; *Matter of Lord*, 227 id. 145; *Matter of Willoughby*, 11 Paige Ch. 257; *Matter of Kernochan*, 84 Misc. 565.)

The question is here presented whether the court has the power to grant such an allowance where the payments are not to be made out of income, but will result in an invasion of principal. In the great majority of the cases in which such allowances were made the income of the incompetent's estate far exceeded his own needs, and the cases used the language that the payments might be made " out of surplus income." (See *Matter of Flagler, supra; Matter of Lord, supra; Matter of Willoughby, supra; Matter of Heeney*, 2 Barb. Ch. 326.)

Counsel have cited, and my own research has disclosed, no case in which the question now before the court was squarely presented and passed upon. *Matter of Ivory* (146 Misc. 803), referred to by counsel for Mrs. Fils, is not in point. The nearest approach to the instant case seems to be *Matter of Battin* (171 Misc. 145), in which an allowance was made apparently payable, in part at least, out of principal, to a sister of the incompetent. The opinion in that case, however, indicates that the court was influenced not only by the principles set forth in the *Heeney* and *Flagler* cases (*supra*), but also by another vital consideration — the possible existence of a contract which " lay a foundation for litigation which might involve the estate of the incompetent in much expense and uncertainty of success " (p. 146).

I reach the conclusion that this court has the power to grant the allowances requested. The primary consideration is whether the incompetent, if sane, would do so, and not the source from which the payments will be made. In repeatedly referring to income I apprehend that the courts were limiting their decisions to the facts presented. That this, and not the source of the payments, is the test, is borne out by the principles laid down in Shelford on Lunatics. Nowhere in his discussion of the subject does he refer to " income " or " principal." On the contrary, he uses the following language (p. 156): " The practice of making an allowance to the immediate relations of the lunatic, other than those whom the lunatic would be bound by law to provide for, has been extended to the case of his brothers and sisters and their children, and is founded, not on their supposed interest in the property, which cannot exist during the lunatic's lifetime, but upon the principle that the court will act with reference to the lunatic, and for his benefit, as it is probable the lunatic himself would have acted if of sound mind. The amount and proportions of such an allowance are, therefore, entirely in the discretion of the court."

I may say, however, that, where the payments to be made involve an infringement upon the corpus of the estate, it must be made to appear, in accordance with the principle referred to, that applications of this kind are to be narrowed and restricted, even more clearly and convincingly than where there is surplus income available, that the incompetent would assume a burden not cast upon him by law.

In the case at bar it appears from the proof presented before the referee that Mrs. Fils is a woman fifty-six years of age, in poor health, living alone, and, although she is married, her husband is unable to render any support to her and has been an inmate of the City Hospital at Welfare Island for more than two years. The

incompetent, prior to his adjudication, felt a deep affection for her, was a frequent visitor at her home, and when he was out of town carried on correspondence with her, exhibiting solicitude for her health and welfare. It is established that for many years he was in the habit of contributing generously to her support, paying her rent, sending her money, and on occasions leaving money for her with the neighbors. There are no persons whom he is legally bound to support, and his estate, in view of his advanced years, is more than ample to provide for him for the remainder of his life. All these considerations lead me to conclude that were Mr. Fleming now of sound mind he would contribute to her support in the amount recommended by the referee.

The question is also presented as to whether this court, in granting the allowance, may direct that it be regarded as an advancement. Counsel for Mrs. Fils cites *Matter of Farmers' Loan & Trust Co.* (181 App. Div. 642; affd., 225 N. Y. 666) as authority for the proposition that this may not be done. That case held rather that, where the order of the Supreme Court making the allowance contained no such provision, the surrogate was without power to direct that the allowance be charged against the distributive share of the recipient, and, by inference, at least, is authority for the proposition that the Supreme Court, in making the allowance, might make such direction. This seems to have frequently been the practice in the old Court of Chancery. With reference to such orders, Chancellor WALWORTH, in *Matter of Willoughby (supra)*, said: " But my personal recollection is, that in all those cases, I required the adult children, who were competent to support themselves, to give a stipulation that the amounts advanced to them respectively should be brought into hotchpot, upon the death of the lunatic; if any part of his personal estate should come to them under the Statute of Distributions. This principle, of considering the allowance as an advance, to be brought into hotchpot in distribution, has not, however, been extended to children of the lunatic who were sickly or decrepit, so as to give them a special claim upon the estate of the lunatic, for a support. The court, in such cases, acts for the lunatic, and in reference to his estate, as it supposes the lunatic himself would have acted if he had been of sound mind " (p. 259).

I conclude that it is within the sound discretion of the court whether or not it will order that the allowance be chargeable against the distributive share of the person receiving it, and, in the case of Mrs. Fils, such a direction will be made.

As to Mrs. Lanagan, as above set forth, no evidence was given or proof presented before the referee, the committee having con-

sented to an allowance of fifty dollars per month. I am of the opinion that her petition must be sent back to the referee to take proof. The committee has no authority in this regard, and it is the court which must be satisfied that the incompetent would in all probability have assumed the burden were he of sound mind.

Motion by Isabel Fils to confirm the referee's report, in so far as it concerns her application, granted. Settle order on notice providing for an allowance to counsel for the committee and for petitioner, payable out of the estate.

The referee's report, in so far as it concerns the application of Catherine Lanagan, will be overruled and her application for an allowance from the estate will be referred back to an official referee to take proof and report to this court together with his opinion thereon.