## CITY BANK FARMERS TRUST CO. v. McGOWAN, Collector of Internal Revenue.

### No. 228.

Circuit Court of Appeals, Second Circuit.

May 10, 1944.

600

J. Seymour Montgomery, Jr., and Montgomery, Grace & Derby, all of New York City (James Lloyd Derby, King, Taylor, Otheman & Swain, and Frederick P. King, and Hines, Rearick, Dorr & Hammond, and John K. Watson, and Paul Smith, all of New York City, of counsel), for appellant.

Carlton Fox, of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen., George L. Grobe, U. S. Atty., of Buffalo, N. Y., and Robert M. Hitchcock, Asst. U. S. Atty., of Washington, D. C., for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff is the administrator of Helen Hall Vail, a deceased incompetent; it sued to recover the amount which it had paid to the defendant, as collector, as an estate tax levied on her estate. The judgment allowed part of the claim and denied the rest; and the plaintiff appeals from the denial. The facts were as follows. Helen Hall Vail, the intestate, was declared incompetent by the Supreme Court of New York, where she lived, in August, 1926; and the plaintiff was appointed a committee of her property. She was then a widow, over seventy years old and incurably insane. Her next of kin were a daughter and three infant children of a dead daughter who lived with their father. She owned real estate in Geneva, New York, Palm Beach, Florida, and New Jersey; and including accumulations of past income, she had personal property, of about $1,000,000. Besides, she was the life beneficiary of a trust in her favor created by her first husband, the income from which was about $300,000 a year; and her income from all sources including this was about $350,000. On October 8, 1926, her daughter petitioned the New York court to direct the plaintiff, as committee, to pay annually to certain named persons reasonable allowances out of the incompetent's surplus income, and the court referred the petition

to a referee to hear testimony. The referee found that the utmost amount necessary for the incompetent's support, including the payment of taxes, would "fall far short of the sum of $50,000 per annum" and that there would remain "a balance of income of over $250,000," and recommended certain allowances. The court confirmed the report and directed the plaintiff to pay to the daughter annually $50,000, and to the guardian of the grandchildren the same amount. It also directed the plaintiff to pay $2,000 a year to a brother, $2,000 to each of three sisters, and $3,000 to a fourth sister. On April 26, 1932, the daughter petitioned the court for an increased allowance; and this petition was referred to another referee. He heard testimony and recommended that the allowances to the daughter and to the grandchildren be increased by $25,000, and these increases should be paid retroactively. The court confirmed his report and entered an order to that effect. Under both these orders the plaintiff, as committee, paid out of surplus income the specified amounts until the death of the incompetent on December 27, 1935. The aggregate of these payments the commissioner included in the incompetent's estate on the ground that they were made in contemplation of death under § 302(c) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 227. The district judge held that all the payments were part of the incompetent's estate except $6,000 of the annual payments to the daughter, $6,000 of those to the grandchildren, and $500 of those to one of the sisters. His reasons for making these exceptions were that the gifts pro tanto "were motivated by the same motive which would have led the incompetent, Helen Hall Vail, to make payments in these amounts to these respective parties." Between the year 1914 and August 1926, when the incompetent was adjudged incompetent, she had given $6,000 annually to her two daughters, and $500 annually to the sister in question.

Section 302(c) of the Revenue Act of 1926 covers "any interest * * * of which the decedent has at any time made a transfer * * * in contemplation of * * * death." The payments at bar were not made by the decedent, so that literally, the words do not apply. Nevertheless, the property was transferred, for the law gave the judges power to transfer it. The first question therefore is whether we should hold that the section covers such payments in case they are made "in contemplation of death," a question which we may reserve for the moment. We are satisfied that the proper construction of the section is as though it read: "any interest * * * of which at any time a transfer has been made from the decedent in contemplation of death." We have no doubt that if Congress had been faced with a situation like that before us, it would have included payments made by the court out of the property of an incompetent; to hold otherwise would be to frustrate the plain purpose of the section. Moreover, that once granted, the intent of the court must control in deciding whether the payments were made "in contemplation of death," for obviously the incompetent herself could have no intent of any kind. The judges' intent was to make such gifts as the incompetent would have made, if she had been competent, so the orders said; but that cannot have meant such gifts as she would have made, had she been not only competent, but expecting to continue competent until she died. It must have meant such gifts as she would have made, if for the moment lucid, but with the prospect of imminent incompetency before her. There can be no doubt as to this, for the judges had no evidence whatever from her past conduct for supposing that, if she had looked forward to ending her life in full possession of her faculties, she would have given away every year to her daughter, her grandchildren and her brother and sisters, more than $160,000 out of the $250,000 which remained to her after paying her taxes and expenses. The allowances she had theretofore made did not remotely approach such figures.

Little has been added by the Supreme Court to what was said as to the phrase, "in contemplation of death," in United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867, which remains our authoritative guide. The only other decisions of that court which can be said to throw any light upon it are Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35, overruled on another point in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368; and Colorado National Bank v. Commissioner of Internal Revenue, 305 U.S. 23, 59 S.Ct. 48, 83 L.Ed. 20, and neither of these professes to modify the doctrine as there laid down. Its outlines were indeed not sharp, or intended to be sharp, but some

things are clear. Such a gift need not be in contemplation of imminent death; the section applies to gifts made by the young and healthy, as well as by the old and infirm. It covers "substitutes for testamentary dispositions." If they are such "substitutes," the test is the donor's motive, which "must be of the sort which leads to testamentary disposition" (page 117 of 283 U.S., page 451 of 51 S.Ct., 75 L.Ed. 867). Moreover, even though they be "substitutes" and the motive be of that "sort," the donor must not be also actuated by a "dominant" motive of some other kind, which was left vague then, and has not yet been defined. Among such motives apparently is the desire to accustom the donee to the management and responsibility of property (United States v. Wells, supra, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867), the desire to make him independent, or to keep down the donor's surtaxes on his income (Becker v. St. Louis Trust Co., supra, 296 U.S. 48, 52, 56 S.Ct. 78, 80 L.Ed. 35), the desire to escape the possible consequences of the donor's own speculations (Colorado National Bank v. Commissioner, supra, 305 U.S. 23, 26, 59 S.Ct. 48, 83 L.Ed. 20). Thus, if the gift be a "substitute" for a "testamentary disposition," and if the only motive be a desire to anticipate the benefit which the donee will eventually get by such a disposition, it might seem to follow inevitably that it is made "in contemplation of death." Yet, if that be true, every present gift, actuated by an undifferentiated desire to benefit the donee, is a gift "in contemplation of death," if only it is made to a person to whom the donor would have left the property on his death. In that event the gift tax covers only gifts which are not "substitutes for testamentary dispositions," and gifts, which, though they are such substitutes, are made with some "dominant" purpose of the specific character which takes a gift out of the section. Possibly that may be the law, but certainly it has not yet been clearly so declared.

■■ We are not however confronted with that question here, because the gifts at bar were "substitutes for testamentary dispositions" in a much more complete sense than the ordinary present gift inter vivos. First, they were made by one who could not enjoy the income during her life, but who must let it roll up and pass upon her intestacy. In Farmers' Loan & Trust Co. v. Bowers, 2 Cir., 68 F.2d 916; Id., 2 Cir., 98 F.2d 794—"The Astor Trusts Case,"—for example, the donor had reserved to himself $150,000 annually out of the income of each trust which substantially exhausted it, so that all that he really gave to his sons was in substance remainders after his death. That was as complete a substitute for a testamentary disposition as it was possible for a gift to be and still be a gift at all. We do not forget that the gift of a remainder is not one "intended to take effect in possession or enjoyment" at the donor's death. May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A. L.R. 1244. Nor do we mean that a gift to a person who would receive it upon the donor's death is inevitably a gift "in contemplation of death," whenever the donor reserves the income to himself for life. If the donor has a specific "dominant" motive of the required kind, such a gift will be excluded. But in determining whether a gift is one "in contemplation of death" an extremely weighty consideration is that by reserving the income to himself for life, the donor has so closely assimilated the gift to a testamentary disposition. In The Astor Trusts Case, supra, that fact was, it is true, coupled with the donor's other, and perhaps "dominant," motive—to escape an estate tax—but that was not among those which the court will recognize.

Moreover, the facts in the case at bar are even stronger than if a sane person had reserved the income to himself and given away only a remainder to those who would in due course have received it anyway. Such a person has had power to dispose of the remainder before he makes the gift, a power of which the gift deprives him. But an incompetent has no such power, and any gift made on his behalf deprives him of nothing; he is an inert conduit of the property to his next of kin, or to his legatees, if he has made a will while sane. It is true that in the case at bar the judges were authorized to act, and did act, for the incompetent, so that the incompetent is not to be deemed jurally impotent if this vicarious power can be imputed to her. But even if it can be, that power was very limited; as we have seen, it was confined to such gifts as she would have made, had she in a lucid interval contemplated her unhappy prospect. They had the choice of letting the surplus roll up, or of disposing of it as she would have disposed of it in such an interval, and as to the bulk of it they chose the daughter and grandchildren as donees, who were sure to take anyway.

There could be no more complete "substitution" of a gift for a "testamentary"—in this case an intestate—"disposition" than that. Perhaps it still would not have been within the section, if the judges had made the allowances in order to set up the donees in business, or something of the kind, but they did nothing of the sort. Indeed, upon the hearings before the referees the testamentary purpose was very frankly made plain, as the following excerpts from the remarks of counsel show. At the first hearing: "The granting of these allowances will only affect the persons who are applying for them, and they will eventually get the property upon Mrs. Vail's death." Again, "By granting these allowances the child and grandchildren will be simply getting now what they will eventually get in the end, with the exception of the small allowances asked for the brother and sisters of Mrs. Vail which they, the only persons interested in the estate are willing these sisters and brother should have." At the second hearing: "It is to me, not a matter of obtaining an allowance. It seems to be the idea of distributing part of this incompetent's property in anticipation more or less of her death." Again, "Where it is impossible for her to use it" (the income) "* * * then the Court can make an advancement." And in accordance with this last suggestion the order provided that, so far as the payments to the daughter and the grandchildren might prove to be unequal, any excess given to one stirps should be regarded as an advancement in the distribution of the estate on intestacy, and should be charged against that stirps.

It is true that the allowances made to the brother and the sisters were not substitutes for that disposition of the property which would otherwise have taken place; on the contrary they diverted the money from those who would otherwise receive them. And yet it seems to us that it is enough to carry them along with the allowances to the daughter and grandchildren that the property transferred was beyond any power of the donor to enjoy, as were the remainders in The Astor Trust Cases; and that it was in addition beyond her individual power of disposition. Although they were not substitutes for the inevitable devolution of the property had they not been made, they were certainly testamentary in their character, and they were actuated by a motive of the sort that leads to testamentary dispositions. With less confidence as to these, we hold that they were also gifts "in contemplation of death" within § 302(c).

Judgment affirmed.

SWAN, Circuit Judge (dissenting).

The question presented by this appeal is whether quarter-yearly payments made by the committee of an incompetent, pursuant to orders of the New York Supreme Court, to relatives of the incompetent during nine years preceding her death, are to be considered property "of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of * * * death", within the meaning of section 302 (c) of the Revenue Act of 1926, Int.Rev. Code § 811(c), 26 U.S.C.A. Int.Rev.Code, § 811(c).

The statutory language as interpreted by Treasury Regulations [1] and by the opinions of the Supreme Court, clearly shows that the operative fact which brings the section into play is "the state of mind" or "motive" of the donor at the time of the transfer. The power of a court of chancery having charge of an incompetent's property to direct allowances out of the incompetent's surplus income has long been recognized both by English law and by the law of New York. Ex parte Whitbread, 2 Mer. 99, 35 Eng.Rep. 878; Matter of Willoughby, 11 Paige, 257; Matter of Flagler, 248 N.Y. 415, 162 N.E. 471, 59 A.L.R. 649. Jurisdiction in this field is conferred upon the New York Supreme Court by § 1356 of the Civil Practice Act. Section 1357 of that Act declares that the court exercising jurisdiction over the property of an incompetent "must preserve his property from waste or destruction; and, out of the proceeds thereof, must provide for * * * the safe keeping and maintenance, and the education, when required, of the incom-

[1] Art. 16, Treas. Reg. 80, says in part: "A transfer in contemplation of death is a disposition of property prompted by the thought of death. * * *

As the phrase 'transfer in contemplation of death' is applicable to many varying transactions, the circumstances of each case must be examined to ascertain the motive which induced the decedent to make the transfer. If the transfer results from mixed motives, one of which is the thought of death, the more compelling motive controls. * * *"

604

petent person and his family." As stated in Matter of Flagler, supra, 248 N.Y. at page 419, 162 N.E. at page 472, 59 A.L.R. 649, allowances out of the incompetent's surplus income are granted "upon the theory that the lunatic would, in all probability, have made such payments if he had been of sound mind." In the case at bar the orders of the New York Supreme Court embodied findings that if the incompetent were in possession of her mental faculties she would have made the allowances ordered by the court. It is against this background that the problem must be considered.

My brothers recognize that "obviously the incompetent herself could have had no intent of any kind" with respect to the allowances ordered by the state court. They then ascribe to her "the intent of the court"; not however, the intent expressed in the court's finding that she would have made the gifts, if competent, but an intent to make "such gifts as she would have made, if for the moment lucid, but with the prospect of imminent incompetency before her." This seems to me the veriest fiction. Fictions, of course, have frequently been employed in legal reasoning, but not so far as I am aware, to extend the coverage of a taxing act beyond its letter. In the words of Mr. Justice Sutherland in Crooks v. Harrelson, 282 U.S. 55, at page 61, 51 S.Ct. 49, at page 51, 75 L.Ed. 156, "the fact must not be overlooked that we are here concerned with a taxing act, with regard to which the general rule requiring adherence to the letter applies with peculiar strictness." It is true that the sums paid out pursuant to the state court orders decreased the amount of the incompetent's estate at death, and in so far as they were paid to her next of kin may perhaps be characterized as the "substitution" of a gift inter vivos for an "intestate disposition." But, as my brothers recognize, gifts to next of kin are not necessarily transfers in contemplation of death—it turns on the donor's dominant motive. United States v. Wells, 283 U.S. 102, 117, 51 S.Ct. 446, 75 L.Ed. 867. The allowances in question have been subjected to a gift tax under the Revenue Act of 1932. City Bank Farmers Trust Co. v. Hoey, 2 Cir., 101 F.2d 9. I am unable to find in the words of section 302 (c) adequate language to subject them to the estate tax. Concededly the incompetent herself could not "contemplate" death. The state court which directed the pay-

ments to be made did not purport to make transfers in contemplation of death and had no legal power to do so. It cannot make testamentary dispositions for the incompetent, N.Y.Civil Practice Act, § 1383; and in making allowances to his family it "does not do this because, if the lunatic were to die tomorrow, they would be entitled to the entire distribution of his estate * * *," but because "the court will not refuse to do, for the benefit of the lunatic, that which it is probable the lunatic himself would have done." Per Lord Eldon in Ex parte Whitbread, 2 Mer. 99, 102-3. Whether Congress would wish to impose an estate tax on gifts made out of an incompetent's surplus income by court order for the support and education of his family seems to me the merest surmise. At any rate, it has not said so in language justifying the courts in so holding. In my opinion the judgment should be reversed.

