## CIRCUIT COURT OF ARLINGTON COUNTY

Horace Hurdle et al.

v.

Charles B. Currier et al.

November, 1977

Case No. (Chancery) 27903

### By JUDGE CHARLES H. DUFF

This matter came before the Court as an action for Declaratory Judgment pursuant to Section 8.01-184, *et seq.*, Code. The Plaintiffs are Horace Hurdle and Aleta Hurdle (parents of the two daughters involved herein) and Gail D. Hurdle, one of the daughters. The Defendants are Charles B. Currier, M.D., and Karen E. Hurdle, the other daughter of Horace and Aleta Hurdle. Plaintiff Gail Hurdle is twenty-three years of age; Defendant Karen E. Hurdle is sixteen years. Defendant Charles B. Currier is a practicing physician and Director of Transplantation at Georgetown University Hospital. The minor Defendant is represented by Leo R. Andrews, Esquire, a competent attorney heretofore appointed as her Guardian ad Litem.

The Petition and amended pleadings seek a declaration from this court that the parents of Karen E. Hurdle have the legal right under the particular facts and circumstances revealed by the evidence to give their consent to a kidney transplant from their minor daughter Karen to their daughter Gail.

The initial question presented is the right of a Court of Equity to grant the relief sought under these circumstances. The equity powers of a court should be cautiously exercised and in instances such as this only

where urgent circumstances are indicated. The probabilities of success should be favorable and the duty must be clear.

The inherent power of a Court of Equity to grant the relief sought herein has been previously decided in American courts. In earlier decisions the English courts took a broad view of the inherent power of the equity courts with regard to incompetents. In *Ex Parte Whitebread* (1816), 2 Mer. 99, 35 Eng. Reprints, 878, it was held that a court of equity had the power to make provisions for a needy brother from the estate of an incompetent. This rule was first followed in this country in the matter of *Willoughby, a Lunatic*, 11 Paige 257 (N.Y. 1844), where the court stated that a Chancellor has the power to deal with the estate of an incompetent in the same manner as the incompetent would if he had his faculties. The rule has been extended to cover not only property matters but also the personal affairs of an incompetent. In 27 Am. Jur. 2d, *Equity*, 592, the following is noted:

> As part of the inherent power of equity, a court of equity has full and complete jurisdiction over the persons of those who labor under any legal disability and also over their property . . . . The court's action is not limited by any narrow bounds but is empowered to stretch forth its arm in whatever direction its aid may be needed. . . . While this is indeed a special exercise of equity jurisdiction, it is beyond question that by virtue thereof the court may pass upon purely personal rights.

I have been cited to three unreported cases from Massachusetts where the courts ruled that a court of equity has the power to permit the natural parents of minor twins to give consent for surgical trans- plants. See *Masden* v. *Harrison*, (# 68651); *Hushey* v. *Harrison*, (# 68666); *Foster* v. *Harrison*, (# 68674), from the Massachusetts Supreme Judicial Court. Likewise, the Court has been advised of an identical case from the Superior Court of Fairfield County, Vermont, (*Hart* v. *Brown*, Record 145672) where declaratory relief was granted allowing the parents to give their consent for a kidney transplant.

In *Strunk* v. *Strunk*, 445 S.W.2d 145, the court was confronted with the question of whether it had the power

to permit the Committee of a twenty-seven year old mental incompetent to consent to a kidney transplant to the incompetent's twenty-eight year old brother. Inherent equity jurisdiction was affirmed and the operation permitted.

It is my opinion that a court of equity under the circumstances revealed by the evidence has the authority to declare the relief requested.

Turning now to whether the evidence supports the exercise of such jurisdiction, the first question addressed should be the need for the transplant. The testimony reveals that Gail Hurdle is the victim of a complete renal function shutdown. She has undergone dialysis treatment three days per week since August 2, 1972; however, various recent medical problems have arisen indicating that continued dialysis as a therapeutic measure will not be effective for Gail. Indeed the evidence suggests that in the absence of a transplant the patient's continued survival is in doubt.

Dr. Charles B. Currier, the Director of Transplantation at Georgetown University Hospital, testified as to the need for the transplant and likewise expressed the belief that the chances of success were excellent and that. due to the almost identical tissue match between the sisters there was a negligible chance of rejection. In short, the prognosis, post-transplant, is that Gail will be able to lead a practically normal life. It should also be noted that no other family member exhibits as satisfactory a tissue match as Karen.

With respect to the risk of the operation to the donor (Karen), Dr. Currier stated that kidney transplant such as is envisioned in this case are no longer experimental but have been an accepted form of therapy for approximately ten years. He personally has performed over eighty such transplants and, other than the normal risks involved in any surgical procedure, no untoward risk will be involved here. He testified that the loss of one kidney would have no significant change in Karen's life expectancy and further that the quality of her life would be the same. This general tenor of minimal risk was cited in *Strunk, supra*, by quotation from *Hamburger and Crosneir, Moral and Ethical Problems in Transplantation - Human Transplantation.*

The evidence further shows that Karen Hurdle began talking with her sister Gail about the possibility of

donating a kidney more than a year ago and before any discussion with the parents. Upon learning of Karen's desire to aid her sister, the parents attempted to discourage it; however, they became convinced of her sincerity and mature approach to the problem. The family consulted with their Pastor, the Reverend Charles W. Alderton, who was a witness at the hearing and who testified that the decision by all parties was morally and ethically sound.

The Guardian ad Litem for the donor personally interviewed Karen and has represented to the Court that she fully understands the matters involved herein and sincerely desires to donate her kidney to her sister. The Guardian ad Litem likewise investigated the qualifications of Dr. Currier and is satisfied with the indicated medical procedures. He concluded that parental consent was necessary as a minor has no legal authority to consent to surgical treatment and requested the Court to decree that the parents have the right to exercise parental consent under these circumstances.

This case does not present the problem which was before the court in *Strunk, supra*, namely whether a Committee of a mental defective should be allowed to give consent. Here the donor is within eighteen months of attaining her majority; her testimony exhibited both maturity and intelligence and she appears to fully understand the risks involved and sincerely desires to donate the kidney to her sister. However, as a minor her consent would be ineffective. The transplant surgeon will not accept the consent of the parents without a Court order declaring their right under the circumstances to give consent. A court of equity should declare such right only after it is satisfied that the parents, the donor and the donee have considered the problem maturely and with a full appreciation of all risks involved. The evidence presented here shows that their decision was arrived at after consultation with the transplant surgeon, with their family physician and with their Pastor. Further, the propriety of their joint decision has been independently investigated by the court-appointed Guardian ad Litem who has recommended the relief requested in this action. I am satisfied that the mature and considered approach to this type of problem which the law requires has been demonstrated by the evidence and that the relief should be granted.

Accordingly, it is my judgment that Horace Hurdle and Aleta Hurdle have the right under the particular facts and circumstances revealed by the evidence to give their consent to the operation for the transplant of a kidney from their minor daughter to their daughter Gail.